## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHRISTOPHER ODDO,
HARRY HYADUCK, SR., LARRY
KAHHAN and GERALD DWYER, on
Behalf of Themselves and All Other
Persons Similarly Situated,

*Plaintiffs,*

v.

T-MOBILE USA, INC.,

*Defendant.*

Civ. Action No. 2:24-cv-07719
(MEF/JRA)

**Motion Date: October 7, 2024**

*Document filed electronically*

*Oral argument requested*

## MEMORANDUM OF LAW IN SUPPORT OF
## T-MOBILE USA, INC.'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION AND
## MOTION TO COMPEL ARBITRATION

## TABLE OF CONTENTS

**Page(s)**

I.      Introduction...............................................................................................1

II.     Background..............................................................................................2

        A.    The Plaintiffs' claims. ...........................................................2

        B.    Plaintiffs repeatedly agreed to arbitrate all disputes with T-Mobile..........................................................................................3

        C.    Plaintiffs did not opt out of arbitration..............................10

III.    Arguments and Citations to Authority .......................................11

        A.    The Court lacks personal jurisdiction over T-Mobile with respect to the Non-Resident Plaintiffs' claims. ...............................11

              1.    Legal standard. .......................................................11

              2.    The Court lacks general jurisdiction over T-Mobile. ..............12

              3.    The Court lacks specific jurisdiction over T-Mobile with respect to the Non-Resident Plaintiffs' claims. .......................16

        B.    Plaintiffs' claims must be arbitrated. .................................19

              1.    The FAA applies and requires enforcement of Plaintiffs' arbitration agreements..............................................................20

              2.    All Plaintiffs entered binding arbitration agreements with T-Mobile and must arbitrate their claims. ...............................21

              3.    Plaintiffs' arbitration agreements delegate all remaining issues to the arbitrator. ..........................................................28

IV.     Conclusion ...............................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abel v. Kirbaran*,
    267 F. App'x 106 (3d Cir. 2008) ..................................................................12, 16

*Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*,
    555 F. App'x 153 (3d Cir. 2014) ........................................................................22

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)............................................................................................20

*Baez v. Stine*,
    260 F. App'x 494 (3d Cir. 2008) (per curiam) ...................................................11

*Baird v. Charter Commc'ns, Inc.*,
    No. 19-10621, 2020 WL 11626081 (C.D. Cal. 2020) ........................................23

*Beaton v. LG Chem, Ltd.*,
    No. 2:20-cv-06806-BRM-ESK,
    2021 WL 3828835 (D.N.J. Aug. 26, 2021) ........................................................17

*Benjamin v. KMB Plumbing & Elec.*,
    No. 3:20-cv-34, 2021 WL 2473845 (M.D. Pa. June 17, 2021) ..........................29

*Bennett v. T-Mobile USA, Inc.*,
    No. 2:22-cv-01805-LK,
    2024 WL 229580 (W.D. Wash. Jan. 22, 2024) .............................................30, 32

*BK Trucking Co. v. PACCAR, Inc.*,
    No. 1:15-cv-02282-JBS-AMD,
    2018 WL 11446903 (D.N.J. Mar. 29, 2018) .......................................................17

*BNSF Ry. Co. v. Tyrrell*,
    581 U.S. 402 (2017)............................................................................................15

*Caduceus, Inc. v. Univ. Physician Grp.*,
    No. 23-3415, 2024 WL 303845 (D.N.J. Jan. 26, 2024) ......................................12

*Castillero v. Xtend Healthcare, LLC*,
No. 22-02099 (GC) (DEA),
2023 WL 8253049 (D.N.J. Nov. 29, 2023) ...................................................16, 17

*Chernus v. Logitech, Inc.*,
No. 17-673(FLW), 2018 WL 1981481 (D.N.J. Apr. 27, 2018) ........................18

*Chornomaz v. Bristol-Myers Squib Co.*,
No. 22-5283 (MAS) (RLS), 2023 WL 4353542 (D.N.J. July 5, 2023)..............30

*Ciapinska v. Tinder, Inc.*,
No. 23-23115, 2024 WL 4024093 (D.N.J. Aug. 30, 2024)................................23

*Clements v. T-Mobile USA, Inc.*,
No. 5:22-cv-07512-EJD,
2024 WL 251326 (N.D. Cal. Jan. 18, 2024).........................................20, 31, 32

*Cochran v. Eason*,
180 S.E.2d 702 (Ga. 1971) ..............................................................................24

*Cohen v. Starbucks Corp.*,
No. 19-2062(FLW), 2019 WL 2591164 (D.N.J. June 25, 2019) .......................13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)............................................................................12, 14, 15

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)..........................................................................................21

*DiCarlo v. Johnson & Johnson*,
No. 17-5855 (MAS) (RLS), 2024 WL 532027 (D.N.J. Feb. 9, 2024) ..............17

*Display Works, LLC v. Bartley*,
182 F. Supp. 3d 166 (D.N.J. 2016)....................................................................14

*Dotson v. Midland Funding, LLC*,
No. 18-cv-16253 (KSH) (JAD),
2019 WL 5678371 (D.N.J. Aug. 1, 2019) .........................................................19

*Dudhwala v. Choice Hotels Int'l Servs. Corp.*,
No. CV 22-873 (EP) (MAH),
2022 WL 4300219 (D.N.J. Sept. 19, 2022) ..................................................13, 15

*Duling v. Mid Am. Credit Union*,
530 P.3d 737 (Kan. Ct. App. 2022) ...................................................24

*Dupler v. Orbitz, LLC*,
No. 18-2303-RGK (GSJx), 2018 WL 6038309 (C.D. Cal. July 5, 2008) ..........30

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)...................................................21

*Fischer v. Fed. Express Corp.*,
42 F.4th 366 (3d Cir. 2022) ...................................................12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)...................................................16

*Frye v. T-Mobile USA, Inc.*,
No. 21-cv-61653-KMM,
2022 WL 22628805 (S.D. Fla. Jan. 13, 2022)...................................................20, 32

*Gavrilovic v. T-Mobile USA, Inc.*,
No. 21-12709, 2022 WL 1086136 (E.D. Mich. Mar. 25, 2022)...................................................31, 32

*Ghouri v. AmSher Collection Servs., Inc*,
No. 1:20-cv-00503, 2022 WL 11964565 (E.D. Va. Oct. 19, 2022)...................................................32

*Goldberg v. Sweet*,
488 U.S. 252 (1989)...................................................21

*Goldfarb v. Solimine*,
245 A.3d 570 (N.J. 2021) ...................................................22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...................................................12

*Harris v. Green Tree Fin. Corp.*,
183 F.3d 173 (3d Cir. 1999) ...................................................31

*Hautz Const., LLC v. H & M Dep't Store*,
No. 12-3478 (FLW), 2012 WL 5880370 (D.N.J. Nov. 20, 2012)...................................................19, 28, 33

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)...................................................29

v

*Horowitz v. AT&T Inc.*,
    No. 3:17-cv-4827-BRM-LHG,
    2018 WL 1942525 (D.N.J. Apr. 25, 2018) ...................................................14, 17

*Hrapczynski v. Bristlecone, Inc.*,
    No. 20-cv-06014, 2021 WL 3209852 (E.D. Pa. July 29, 2021) ........................24

*IMO Indus., Inc. v. Kiekert, AG*,
    155 F.3d 254 (3d Cir. 1998) ..............................................................................11

*Jager v. Fleet Mgmt. Rd. Serv.*,
    No. 14-8130 (KM) (MAH), 2021 WL 4932765 (D.N.J. Oct. 22, 2021)............12

*Jennings v. Carvana LLC*,
    No. 22-2948, 2024 WL 1209746 (3d Cir. Mar. 21, 2024) .................................22

*Juarez v. T-Mobile USA, Inc.*,
    No. 2:24-cv-00700-SPG, slip op. (C.D. Cal. Aug. 23, 2024)...........20, 29, 30, 32

*Kisciras v. Experian Info. Sols., Inc.*,
    No. 23-776 (ZNQ) (RLS), 2024 WL 1713704 (D.N.J. Apr. 22, 2024) .............22

*Klutho v. JK Powerhouse LLC*,
    542 F. Supp. 3d 893 (E.D. Mo. 2021) ................................................................30

*Launch Fitness, LLC v. GoPerformance Franchising, LLC*,
    No. 13-216, 2013 WL 1288253 (D.N.J. Mar. 26, 2013) .......................20, 28, 33

*May v. Anderson*,
    119 P.3d 1254 (Nev. 2005)................................................................................23

*Metro. Grp. Prop. & Cas. Ins. Co. v. Electrolux Home Prods., Inc.*,
    No. 17-cv-11865, 2018 WL 2422023 (D.N.J. May 29, 2018) ..........................14

*Middleton v. T-Mobile US, Inc.*,
    No. 1:20-cv-03276,
    2022 WL 16828226 (E.D.N.Y. Aug. 24, 2022) ..........................................31, 32

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) ................................................................................12

*Montgomery v. Bristol-Myers Squibb Co.*,
 No. 3:19-cv-19948-FLW-DEA,
 2020 WL 3169373 (D.N.J. June 15, 2020) ........................................................ 31

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*,
 460 U.S. 1 (1983) ................................................................................................ 30

*O'Connor v. Sandy Lane Hotel Co.*,
 496 F.3d 312 (3d Cir. 2007) ............................................................................... 16

*Pattanayak v. Mastercard, Inc.*,
 No. 20-12640 (KM) (JBC), 2021 WL 960856 (D.N.J. Mar. 12, 2021) ............. 14

*Perkins v. Benguet Consol. Mining Co.*,
 342 U.S. 437 (1952) ............................................................................................ 15

*Peterson v. HVM LLC*,
 No. 14-1137, 2016 WL 845144 (D.N.J. Mar. 3, 2016) ...................................... 16

*Pulse Techs., Inc. v. Notaro*,
 67 A.3d 778 (Pa. 2013) ....................................................................................... 22

*Remick v. Manfredy*,
 238 F.3d 248 (3d Cir. 2001) ............................................................................... 16

*Rendon v. T-Mobile USA, Inc.*,
 No. 2:24-cv-01666-SPG, slip op. (C.D. Cal. Aug. 30, 2024) ...................... 25, 30

*Rent-A-Center, W., Inc. v. Jackson*,
 561 U.S. 63 (2010) .............................................................................................. 28

*Richardson v. Coverall N. Am., Inc.*,
 811 F. App'x 100 (3d Cir. 2020) ........................................................................ 29

*S. Broward Hosp. Dist. v. Medquist, Inc.*,
 258 F. App'x 466 (3d Cir. 2007) ........................................................................ 21

*Saadeh v. T-Mobile USA, Inc.*,
 No. 2:21-cv-12871, 2022 WL 193968 (D.N.J. Jan. 21, 2022) ........................... 32

*Selig v. Philadelphia Title Ins. Co.*,
 111 A.2d 147 (Pa. 1955) ..................................................................................... 24

*Shovel Transfer & Storage v. Pa. Liquor Control Bd.*,
739 A.2d 133 (Pa. 1999) .......................................................................24

*Smith v. Experian Info. Sols., Inc.*,
No. 22-06471, 2023 WL 6057377 (D.N.J. Sept. 14, 2023)..............................28

*Smith v. Spizzirri*,
144 S. Ct. 1173 (2024) ....................................................................27, 32

*State v. Fed. Def. Program, Inc.*,
882 S.E.2d 257 (Ga. 2022) .................................................................23

*Taylor v. CDS Advantage Sols.*,
No. 2:20-cv-02803, 2024 WL 1048124 (D.N.J. Mar. 9, 2024).........................21

*Travers v. FedEx Corp.*,
584 F. Supp. 3d 1 (E.D. Pa. 2022) .......................................................17

*U.S. Home Corp. v. Michael Ballesteros Tr.*,
415 P.3d 32 (Nev. 2018)....................................................................24

*Varallo v. Elkins Park Hosp.*,
63 F. App'x 601 (3d Cir. 2003) ...........................................................30

*Weichert Co. Realtors v. Ryan*,
608 A.2d 280 (N.J. 1992) ..................................................................23

**RULES**

Rule 12(b)(2)...................................................................................19

Rule 12(b)(6)...................................................................................19

**STATUTES**

9 U.S.C. § 2 ...............................................................................20, 21

9 U.S.C. § 3 ...............................................................................27, 32

## I.    INTRODUCTION

Plaintiffs allege that Defendant T-Mobile USA, Inc. ("T-Mobile") promised it would never increase the price of certain rate plans and then broke that promise. There are many reasons why Plaintiffs' claims fail, but the merits of their claims are not before this Court and cannot be decided by this Court.

First, the claims asserted by Plaintiffs Harry Hyaduck, Gerald Dwyer, and Larry Kahhan (collectively, the "Non-Resident Plaintiffs") must be dismissed because the Court lacks personal jurisdiction over T-Mobile with respect to their claims. T-Mobile is not at home in New Jersey; it is neither incorporated in New Jersey nor has its principal place of business in the State. In addition, the Non-Resident Plaintiffs' claims do not arise out of any nexus between T-Mobile and New Jersey or any alleged conduct by T-Mobile in New Jersey.

Second, the claims of Plaintiff Christpher Oddo, a New Jersey resident, must be decided by an arbitrator. Plaintiff Oddo, and the Non-Resident Plaintiffs, agreed to be bound by T-Mobile's Terms and Conditions and its arbitration provision. Under the arbitration agreement, Plaintiff Oddo agreed to arbitrate "any and all claims or disputes" related to T-Mobile services. Plaintiff Oddo does not challenge the validity of the arbitration agreement and does not allege that he timely opted out of arbitration.

Finally, because the Non-Resident Plaintiffs also agreed to arbitration, if the Court finds it has personal jurisdiction over T-Mobile, then the Court should dismiss the Non-Resident Plaintiffs claims in favor of arbitration in an out of state forum in accordance with this Court's typical practice.

## II.    BACKGROUND

### A.    The Plaintiffs' claims.

Plaintiffs are four individuals from four different states who allege that they have been long-term customers of T-Mobile.[1]  Plaintiff Oddo is a New Jersey resident who alleges that he has been a T-Mobile customer since 2010.[2]  Plaintiff Hyaduck is a Georgia resident who alleges that he has been a T-Mobile customer for over three years.[3]  Plaintiff Kahhan is a Nevada resident who alleges that he has been a T-Mobile customer since before 2017.[4]  And Plaintiff Dwyer is a Pennsylvania resident who alleges that he has been a T-Mobile customer since 2017.[5]

Each Plaintiff alleges generally that T-Mobile breached its agreements with them in May 2024 by increasing the monthly recurring charges for their wireless

---

[1] Compl. ¶¶ 1, 14, 22, 27, 34.

[2] *Id.* ¶¶ 1, 14.

[3] *Id.* ¶¶ 1, 22.

[4] *Id.* ¶¶ 1, 27.

[5] *Id.* ¶¶ 1, 34.

service plans, and each Plaintiff purports to assert a variety of claims against T-Mobile based on those allegations.[6]

Notably, none of the Non-Resident Plaintiffs who reside outside of New Jersey — Hyaduck, Kahhan, or Dwyer — alleges any facts that would establish a connection between his claims and the State of New Jersey. The Non-Resident Plaintiffs do not, for example, allege that they contracted with T-Mobile in New Jersey, that they resided in New Jersey at any time while they were T-Mobile customers, or that T-Mobile directed any conduct, much less the specific price increases that Plaintiffs challenge, at them in the State of New Jersey. Indeed, the Non-Resident Plaintiffs do not allege that they have any connections at all with the State of New Jersey.[7]

**B.    Plaintiffs repeatedly agreed to arbitrate all disputes with T-Mobile.**

T-Mobile's relationship with its customers, including Plaintiffs, is governed by its industry-standard Terms and Conditions. Acceptance of the Terms and Conditions is a prerequisite to using T-Mobile service.[8] Plaintiffs have consistently agreed to T-Mobile's Terms and Conditions by activating, using, and paying for T-

---

[6] *See, e.g., id.* ¶¶ 4, 21, 26, 33, 37, 47–101.

[7] The Complaint includes a boilerplate allegation that "T-Mobile has caused injury to Plaintiffs . . . in New Jersey" (Compl. ¶ 11), but Plaintiffs do not allege any facts that would support that conclusory allegation.

[8] Sanchez Decl. ¶ 7.

3

Mobile's services and devices.[9]  While T-Mobile updates its Terms and Conditions from time to time, every version of T-Mobile's Terms and Conditions in effect since Plaintiffs activated their services with T-Mobile has required individual arbitration of disputes in any way related to or concerning T-Mobile's services, devices, or products.[10]

T-Mobile updated its Terms and Conditions most recently in May 2023 (the "May 2023 T&Cs").[11]  Before those updates took effect, T-Mobile conducted a messaging campaign to notify customers of the upcoming changes and explain the meaning of the changes.[12]  Specifically, in April 2023, T-Mobile sent an email to each Plaintiff at the email address associated with their accounts.[13]  The email's subject line was "We're updating our terms and conditions," and the email informed Plaintiffs that T-Mobile's Terms and Conditions were being updated effective May 15, 2023.[14]  The email included a link where Plaintiffs could easily access the May 2023 T&Cs on T-Mobile's website, as well as a link to a Frequently Asked Questions

---

[9] *Id.* ¶¶ 11–12, 22–23; *id.* Exs. 11, 22 ("You accept these T&Cs by . . . activating, using, or paying for the Service or a Device").

[10] *See, e.g.*, *id.* ¶ 13; *see also id.* Exs. 1–20.

[11] *Id.* ¶ 8.

[12] *Id.* ¶ 10.

[13] *Id.*

[14] *Id.*

page explaining the changes.[15]  The email also  notified Plaintiffs in plain language that, by using T-Mobile's services after May 15, 2023, they were agreeing to the May 2023 T&Cs.[16]  Each Plaintiff continued to use T-Mobile's services after May 15, 2023.[17]

T-Mobile's May 2023 T&Cs include a prominent, easy-to-understand arbitration agreement, which provides customers with a consumer-friendly and speedy mechanism for resolving their disputes on an individualized basis[18]:

> By accepting these T&Cs, you are agreeing to resolve any dispute with us through individual binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit.

Consistent with the email sent to Plaintiffs in April 2023, the May 2023 T&Cs themselves also clearly inform customers how to accept — or not to accept — the Terms and Conditions[19]:

---

[15] *Id.*

[16] *Id.*

[17] *Id.* ¶ 12.

[18] *Id.* ¶ 13.

[19] *Id.* ¶ 11.

## HOW DO I ACCEPT THESE T&Cs?

You accept these T&Cs by doing any of the following things:

- giving us a written or electronic signature or confirmation, or telling us orally that you accept;
- activating, using, or paying for the Service or a Device; or
- opening the Device box.

If you don't want to accept these T&Cs, don't do any of these things.

The May 2023 T&Cs also clearly inform customers of their arbitration agreement in the very first unnumbered paragraph[20]:

> Thanks for choosing T-Mobile! We are pleased that you selected us as your wireless provider. Please use this page as a reference for questions about your service and the terms and conditions of service that govern the service(s) you purchased from us. These Terms & Conditions ("T&Cs") contain important information about your relationship with us, including individual mandatory binding arbitration of disputes between us, instead of class actions or jury trials. By Accepting these T&Cs, you agree, on behalf of yourself, any person on your account, an Authorized User, and any person you allow to use the Services, Product, or your Device, to be bound by these provisions.

---

[20] *Id.* ¶ 9.

The May 2023 T&Cs then go on to include a detailed, mandatory arbitration provision under the large, bolded header "**HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**"[21]  The arbitration provision states in pertinent part[22]:

> By accepting these T&Cs, you are agreeing to resolve any dispute with us through individual binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit.
>
> ***Individualized Dispute Resolution and Arbitration*. YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES, OF ANY NATURE, INCLUDING TORT AND STATUTORY CLAIMS, IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD, ON AN INDIVIDUAL BASIS, THE SAME DAMAGES AN RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES[).]**
>
> This includes any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized

---

[21] *Id.* ¶ 13.

[22] *Id.*

retailers, or third-party vendors) whenever you also assert claims against us in the same proceeding.  You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below). . . .

**Class and Mass Action Waiver.  YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS, REPRESENTATIVE, MASS, OR CONSOLIDATED ACTION.  If you opt out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you.  Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated, mass, or representative proceeding without having complied with the opt out requirements above.**

Although the May 2023 T&Cs are the most recent and operative arbitration agreements relevant here, Plaintiffs also accepted prior versions of the Terms and Conditions throughout their relationships with T-Mobile.  Each such version included a mandatory arbitration obligation and a class action waiver.[23]  For instance, Plaintiff Oddo signed a Service Agreement with T-Mobile that incorporated the then-current Terms and Conditions.[24]  Plaintiff Hyaduck signed two Service

---

[23] *Id.* ¶¶ 41–53.

[24] *Id.* ¶ 43.

Agreements with T-Mobile, incorporating the then-current Terms and Conditions.[25]

Plaintiff Dwyer signed a Service Agreement with T-Mobile that incorporated the then-current Terms and Conditions.[26]  And when Plaintiff Kahhan first activated his T-Mobile service, as a matter of T-Mobile's consistent and well established business practices and procedures, he was required to agree to the then-current Terms and Conditions; without such agreement, his service would not have been activated.[27] Moreover, in advance of new Terms and Conditions going into effect on March 1, 2021 (the "2021 T&Cs"), T-Mobile sent notice of the 2021 T&Cs to its customers via email, SMS text message, and notification on their first bill following the update.[28]  Plaintiffs accepted and agreed to the 2021 T&Cs by, among other ways, continuing to use and pay for their T-Mobile service.[29]

Plaintiffs also entered into multiple written contracts with T-Mobile that included independent arbitration agreements.[30]  These contracts include contracts to

---

[25] *Id.* ¶ 48.

[26] *Id.* ¶ 52.

[27] *Id.* ¶¶ 7, 58.

[28] *Id.* ¶¶ 18–22.

[29] *Id.* ¶¶ 23, 42, 47, 55, 57.

[30] *Id.* ¶¶ 41–53.

lease cellular phones ("Lease Agreements") and purchase equipment ("Equipment Installment Plans" or "EIPs") from T-Mobile.[31]

## C.    Plaintiffs did not opt out of arbitration.

Under each version of the T-Mobile Terms and Conditions that has been in effect since Plaintiffs became T-Mobile customers, Plaintiffs were permitted to opt out of arbitration by notifying T-Mobile of that decision within 30 days after first activating service from T-Mobile.[32]  For example, the May 2023 T&Cs provide: "You may choose to pursue your claim in court and not by arbitration if you opt out of these arbitration procedures <u>within 30 days</u> from the earlier of the date you purchased a product or device from us or the date you activated a new line of service."[33]

Plaintiffs' Complaint does not allege that any Plaintiff opted out of arbitration in accordance with T-Mobile's Terms and Conditions, and T-Mobile's records confirm that none of the Plaintiffs opted out of arbitration.[34]  Plaintiffs do attempt to

---

[31]  Plaintiff Oddo signed six Lease Agreements and five EIPs that contained arbitration provisions and class action waivers. *Id.* ¶¶ 44–45.  Plaintiff Hyaduck signed two EIPs that contained arbitration provisions and class action waivers. *Id.* ¶ 49.  And Plaintiff Dwyer signed two EIPs that contained arbitration provisions and class action waivers. *Id.* ¶ 53.

[32]  *Id.* ¶ 60.

[33]  *Id.*

[34]  *Id.* ¶ 63–66.

allege they made a belated attempt to opt out of the May 2023 T&Cs in connection with this lawsuit, contending that they opted out "upon counsel's conducting a google search and finding this provision in the 'Terms and Conditions' dated May 15, 2023."[35]  Plaintiffs do not — and could not — allege that this was a valid opt out under any of their agreements.  Moreover, there is no evidence of this belated and improper opt-out request in T-Mobile's records.[36]

### III.    ARGUMENTS AND CITATIONS TO AUTHORITY

**A.    The Court lacks personal jurisdiction over T-Mobile with respect to the Non-Resident Plaintiffs' claims.**

The Court does not have jurisdiction over the Non-Resident Plaintiffs' claims.  The Non-Resident Plaintiffs are not citizens or residents of New Jersey, and their claims do not allow the Court to exercise general or specific jurisdiction over T-Mobile.  The Court should therefore dismiss the Non-Resident Plaintiffs' claims.[37]

### 1.    Legal standard.

"Personal jurisdiction is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication."  *Baez v.*

---

[35] Compl. ¶ 39.

[36] *Id.* ¶ 63–66.

[37] T-Mobile is not arguing that the Court lacks personal jurisdiction over Plaintiff Oddo.  He should be compelled to arbitrate his claims as set forth below.  If the Court finds that it does have jurisdiction over the Non-Resident Plaintiffs' claims, it should dismiss those claims because they are likewise obligated to arbitrate their claims.

*Stine*, 260 F. App'x 494, 496 (3d Cir. 2008) (per curiam) (cleaned up). The Court must first look to the relevant state's long-arm statute to see if it permits the exercise of personal jurisdiction. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). It then must apply "the precepts of the Due Process Clause of the Constitution." *Id.* In this case, "the first step collapses into the second, because 'New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution.'" *Jager v. Fleet Mgmt. Rd. Serv.*, No. 14-8130 (KM) (MAH), 2021 WL 4932765, at * 4 (D.N.J. Oct. 22, 2021) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004)). "Accordingly, personal jurisdiction over a non-resident defendant is proper only [when] the defendant has certain minimum contacts with New Jersey such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (cleaned up). Plaintiffs "bear[] the burden of establishing, through sworn affidavits or other competent evidence, that either specific or general jurisdiction can be exercised." *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008). The Non-Resident Plaintiffs can do neither here.

### 2.    The Court lacks general jurisdiction over T-Mobile.

General jurisdiction exists only when the defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 384 (3d Cir.

2022) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "A corporation is 'at home' where it is incorporated and where it maintains its principal place of business."  *Caduceus, Inc. v. Univ. Physician Grp.*, No. 23-3415, 2024 WL 303845, at *2 (D.N.J. Jan. 26, 2024) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

T-Mobile is not at home in New Jersey.  T-Mobile is incorporated in Delaware, and its principal place of business is in Bellevue, Washington.[38]  Thus, the paradigm bases for general jurisdiction are not satisfied.

Plaintiffs allege that this Court has general jurisdiction over T-Mobile because it "is registered to do business in the State of New Jersey," "conducts substantial business in New Jersey," "has agents and representatives that can be found in this State," and "has numerous stores and other sales facilities in New Jersey."[39]  Even accepting these allegations as true does not come close to establishing general jurisdiction over T-Mobile in New Jersey.  As the Court noted in *Cohen v. Starbucks Corp.*, No. 19-2062(FLW), 2019 WL 2591164, at *3 (D.N.J. June 25, 2019), "Starbucks has thousands of retail outlets throughout all fifty states.  Its retail outlets in New Jersey are no more 'extensive' than its retail outlets in alternative/comparable states.  These are unremarkable circumstances that do not

---

[38] Compl ¶ 2.

[39] Compl. ¶ 11.

elevate Starbucks to 'at-home' status in New Jersey." *See also Dudhwala v. Choice Hotels Int'l Servs. Corp.*, No. 22-873 (EP) (MAH), 2022 WL 4300219, at *4 (D.N.J. Sept. 19, 2022) (rejecting allegations as basis for general jurisdiction that the defendant "conducts business throughout New Jersey" and "maintains numerous hotels, employs numerous workers working at those hotels, . . . presumably maintains New Jersey bank accounts and files state taxes here," and maintains a Trenton "Home Office" with at least a dozen employees).

And being authorized to conduct business and conducting business in New Jersey does not render T-Mobile "at home" here for general jurisdiction purposes. *See Daimler AG*, 571 U.S. at 761 (concluding that "subjecting a corporation to general jurisdiction in every state where it engages in a substantial, continuous, and systematic course of business" would be "unacceptably grasping"); *see Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 178 (D.N.J. 2016) (holding that, post-*Daimler*, it "cannot be the law" that this Court may exercise general jurisdiction over any corporation registered to do business in New Jersey). Indeed, this Court routinely finds that alleging a non-resident corporate defendant is registered to and does business in New Jersey is insufficient to confer general jurisdiction. *See, e.g.*, *Metro. Grp. Prop. & Cas. Ins. Co. v. Electrolux Home Prods., Inc.*, No. 17-cv-11865, 2018 WL 2422023, at *2 (D.N.J. May 29, 2018); *Horowitz v. AT&T Inc.*, No. 3:17-cv-4827-BRM-LHG, 2018 WL 1942525, at *13 (D.N.J. Apr. 25, 2018);

*Dudhwala*, 2022 WL 4300219, at \*4; *Pattanayak v. Mastercard, Inc.*, No. 20-12640 (KM) (JBC), 2021 WL 960856, at \*4 (D.N.J. Mar. 12, 2021).

Finally, Plaintiffs' Complaint also fails to allege any facts that would come close to allowing the Court to exercise general jurisdiction over T-Mobile under the "exceptional case" doctrine, which requires contacts "so substantial and of such a nature as to render [T-Mobile] at home" in New Jersey. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation omitted). And the case that created that doctrine shows that it could never be exercised in this case. In *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952), the seminal case establishing the doctrine, a Philippine company was forced to halt its Philippine mining operations because of Japanese occupation and moved to Ohio, where it temporarily conducted all of its business. So while the company was neither incorporated in Ohio nor had its principal place of business there, it was essentially "at home" in Ohio during the relevant time period such that it allowed an Ohio court to exercise general jurisdiction over it. *See id.* at 448–49. Since *Perkins*, the Supreme Court has continually and tightly cabined general jurisdiction for a corporation to "the place of incorporation and the principal place of business." *Daimler*, 571 U.S. at 137, 139 n.19. There can be no serious argument that T-Mobile can be rendered "at home" in New Jersey for purposes of a general jurisdiction analysis.

Accordingly, this Court does not have general jurisdiction over T-Mobile.

15

### 3. The Court lacks specific jurisdiction over T-Mobile with respect to the Non-Resident Plaintiffs' claims.

Specific jurisdiction exists "only when the 'cause of action arises out of [the] defendant's forum-related activities, such that the defendant "should reasonably anticipate being haled [sic] into court" in that forum.'" *Abel*, 267 F. App'x at 108 (quoting *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001)).  "Establishing specific jurisdiction requires a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice."  *Peterson v. HVM LLC*, No. 14-1137, 2016 WL 845144, at *4 (D.N.J. Mar. 3, 2016) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)).  For each claim, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

Importantly, "[i]n proposed class actions, courts typically analyze whether there is either general or specific jurisdiction as to the claims of each named plaintiff."  *Castillero v. Xtend Healthcare, LLC*, No. 22-02099 (GC) (DEA), 2023 WL 8253049, at *3 (D.N.J. Nov. 29, 2023) (citing *Fischer*, 42 F.4th at 375).  In *Castillero*, the Court dismissed a Florida named plaintiff's claims after finding that

16

she was not harmed in New Jersey and that her claims stemmed from her "treatment" in Florida by her employer.  *Id.* at *7.  And in *Horowitz*, the Court dismissed the claims of two non-resident named plaintiffs for lack of specific jurisdiction when "the facts giving rise to their claims in this circumstance could not have arisen in New Jersey."  2018 WL 1942525, at *15–16.

As this Court noted in *BK Trucking Co. v. PACCAR, Inc.*, No. 1:15-cv-02282-JBS-AMD, 2018 WL 11446903, at *5 (D.N.J. Mar. 29, 2018), federal courts have "dismissed claims by plaintiffs who were not residents of the forum state where the pleadings did not sufficiently indicate an affiliation between the forum and the underlying controversy." (internal quotation marks omitted) (collecting cases).  In *BK Trucking*, the Court denied a motion to amend to add new Plaintiffs, "none of whom are residents of New Jersey, and none of whom allege any injury in New Jersey," as futile.  *Id.*; *see also DiCarlo v. Johnson & Johnson*, No. 17-5855 (MAS) (RLS), 2024 WL 532027, at *3 (D.N.J. Feb. 9, 2024); *Beaton v. LG Chem, Ltd.*, No. 2:20-cv-06806-BRM-ESK, 2021 WL 3828835, at *4 (D.N.J. Aug. 26, 2021) ("LG is not subject to specific jurisdiction in California or Michigan, because nothing in the record shows Beaton's claims arose out of or related to LG's contacts with California or Michigan."); *Travers v. FedEx Corp.*, 584 F. Supp. 3d 1, 5–6 (E.D. Pa. 2022) ("Beanland does not allege the faintest of relationships, let alone a strong relationship, between FedEx's Pennsylvania contacts and his claim. . . .  His claims

17

have nothing to do with Pennsylvania.  He simply alleges no connection between FedEx's Pennsylvania conduct and his claims.  We lack personal jurisdiction over Mr. Beanland's claim.").

As in the myriad cases discussed above, the Non-Resident Plaintiffs' allegations do not allow the Court to exercise personal jurisdiction over their claims. The Complaint does not establish any connection between New Jersey and the Non-Resident Plaintiffs' claims.  There is no allegation that the Non-Resident Plaintiffs' claims arise out of or relate to any alleged conduct by T-Mobile in New Jersey or any contacts T-Mobile may have with the State.  The Complaint is entirely devoid of any allegations even attempting to explain how the Non-Resident Plaintiffs — who themselves allege no connection whatsoever to New Jersey — could have plausibly been injured in New Jersey by T-Mobile's conduct in New Jersey.  The generic, conclusory allegation that "T-Mobile has caused injury to Plaintiffs and class members in New Jersey" is woefully insufficient to establish specific jurisdiction.  Compl. ¶ 11.  If the Non-Resident Plaintiffs suffered any injuries, they were not suffered in New Jersey or as the result of any actions by T-Mobile in New Jersey. *See Chernus v. Logitech, Inc.*, No. 17-673(FLW), 2018 WL 1981481, at *6 (D.N.J. Apr. 27, 2018) (finding no specific jurisdiction over non-resident named plaintiff's claims because he failed to allege he purchased or used the allegedly defective product in New Jersey "or otherwise suffered any harm in New Jersey").

18

Accordingly, this Court lacks personal jurisdiction over T-Mobile with respect to the Non-Resident Plaintiffs' claims, and the Court should dismiss those claims pursuant to Rule 12(b)(2).

**B.    Plaintiffs' claims must be arbitrated.**

All of the Plaintiffs agreed to arbitrate[40] their claims against T-Mobile.  The Court should therefore compel Oddo to arbitrate his claims against T-Mobile (and stay his claims in this Court).  In addition, if the Court finds that it has personal jurisdiction over the Non-Resident Plaintiffs' claims, consistent with this Court's practice, it should dismiss those claims in favor of arbitration because the Non-Resident Plaintiffs agreed to arbitrate their claims against T-Mobile in their respective states of residence.  *See, e.g.*, *Hautz Const., LLC v. H & M Dep't Store*, No. 12-3478 (FLW), 2012 WL 5880370, at *17 (D.N.J. Nov. 20, 2012); *Launch*

---

[40] Although Plaintiffs' Complaint makes several references to their "agreement[s]" with T-Mobile, *see* Compl. ¶¶ 21, 26, 33, 37, & 46(c), they did not attach any agreements to the Complaint.  Similarly, Plaintiffs reference "T-Mobile's Terms and Conditions indicating that there was a mandatory arbitration provision and class action waiver," Compl. ¶ 38, but do not attach a copy of any Terms and Conditions, which are readily available online.  *See also* Compl. ¶ 39 (acknowledging counsel "conduct[ed] a google search" and found the May 2023 T&Cs).  The Court may consider these Terms and Conditions and "agreements" while applying the Rule 12(b)(6) standard to T-Mobile's Motion to Compel Arbitration.  *See Dotson v. Midland Funding, LLC*, No. 18-cv-16253 (KSH) (JAD), 2019 WL 5678371, at *3–4 (D.N.J. Aug. 1, 2019), *R. & R. adopted*, 2020 WL 291537 (D.N.J. Jan. 21, 2020).

*Fitness, LLC v. GoPerformance Franchising, LLC*, No. 13-216, 2013 WL 1288253, at *4 (D.N.J. Mar. 26, 2013).

**1.    The FAA applies and requires enforcement of Plaintiffs' arbitration agreements.**

There can be no question that the FAA applies to Plaintiffs' arbitration agreements.  T-Mobile's Terms and Conditions and the Plaintiffs' contracts expressly provide that the FAA governs their arbitration agreements,[41] and numerous courts have enforced this exact provision.  *See, e.g.*, *Clements v. T-Mobile USA, Inc.*, No. 5:22-cv-07512-EJD, 2024 WL 251326, at *5 (N.D. Cal. Jan. 18, 2024) (applying FAA and compelling arbitration under T-Mobile's arbitration provision), *recons. denied*, 2024 WL 2060866 (N.D. Cal. May 8, 2024); *Frye v. T-Mobile USA, Inc.*, No. 21-cv-61653-KMM, 2022 WL 22628805, at *2–3 (S.D. Fla. Jan. 13, 2022) (same); *see also* Ex. A, *Juarez v. T-Mobile USA, Inc.*, No. 2:24-cv-00700-SPG, slip op. at 14 (C.D. Cal. Aug. 23, 2024).  Moreover, Plaintiffs' agreements with T-Mobile are governed by the FAA because they relate to the provision of wireless services across state lines.  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995) (holding FAA applies to all written arbitration agreements in "contracts *evidencing* a transaction *involving* commerce" (quoting 9 U.S.C. § 2)); *Goldberg v.*

---

[41] Sanchez Decl. ¶¶ 14, 43–45, 48–49, 52–53, 56.

*Sweet*, 488 U.S. 252, 254–55 (1989) (deemed "interstate telephone calls" to constitute "interstate commerce" for purposes of tax discrimination lawsuit).

The FAA preempts state law and requires enforcement of arbitration agreements by providing that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, federal courts are required to "respect and enforce agreements to arbitrate," including "the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). Moreover, courts must liberally construe the scope of an arbitration agreement and resolve "any doubts in favor of arbitration." *Taylor v. CDS Advantage Sols.*, No. 2:20-cv-02803 (BRM), 2024 WL 1048124, at *3 (D.N.J. Mar. 9, 2024) (quoting *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007)), *recons. denied*, 2024 WL 1635686 (D.N.J. Apr. 16, 2024). "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## 2. All Plaintiffs entered binding arbitration agreements with T-Mobile and must arbitrate their claims.

"When deciding a motion to compel arbitration, a court must typically ascertain whether: '(1) a valid agreement to arbitrate exists, and (2) the particular

dispute falls within the scope of that agreement.'" *Kisciras v. Experian Info. Sols., Inc.*, No. 23-776 (ZNQ) (RLS), 2024 WL 1713704, at *2 (D.N.J. Apr. 22, 2024) (quoting *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir. 2014)). As discussed below, T-Mobile's Terms and Conditions delegate that second inquiry to the arbitrator (though Plaintiffs' claims also clearly fall within the scope of their arbitration agreements in any case).

The threshold question of whether parties contractually agreed to arbitrate their dispute is governed by state law. *Jennings v. Carvana LLC*, No. 22-2948, 2024 WL 1209746, at *2 (3d Cir. Mar. 21, 2024). Under all applicable state laws, the essential elements to form a contract, including one for arbitration, are "offer, acceptance, and consideration."[42] *Goldfarb v. Solimine*, 245 A.3d 570, 578 (N.J. 2021); *Pulse Techs., Inc. v. Notaro*, 67 A.3d 778, 783 (Pa. 2013); *State v. Fed. Def. Program, Inc.*, 882 S.E.2d 257, 280 (Ga. 2022); *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). All of these elements are easily met here.

---

[42] Pursuant to the May 2023 T&Cs, the governing law is "the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which [the customers'] billing address in [T-Mobile's] records is located." Sanchez Decl. ¶ 16. T-Mobile's Service Agreements, EIPs, and Lease Agreements (which are discussed in more detail below), contain identical choice-of-law language to the May 2023 T&Cs. *Id.* ¶¶ 43–45, 48–49, 52–53. While the analysis of contract formation implicates different state laws, the relevant states' laws are substantially similar as it relates to relevant issues of contract formation.

In circumstances like this, courts have regularly "held that when an offeree accepts the offeror's services without expressing any objection to the offer's essential terms, the offeree has manifested assent to those terms." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285 (N.J. 1992). This includes instances when the agreements are not necessarily signed but accepted by conduct. *See, e.g.*, *Ciapinska v. Tinder, Inc.*, No. 23-23115, 2024 WL 4024093, at *4 (D.N.J. Aug. 30, 2024) (holding Plaintiff agreed to arbitrate by creating Tinder account when Tinder's terms of use provided for acceptance by "creating an account or logging in"). In fact, "a consumer need not take affirmative action indicating consent other than use of the services, such as a signature or a check box, where the user has actual or constructive knowledge of the terms and conditions." *Baird v. Charter Commc'ns, Inc.*, No. 19-10621, 2020 WL 11626081, at *4 (C.D. Cal. 2020). "[A] common factor among cases finding sufficient assent [to arbitrate] is a clear and specific offer. And when acceptance does not require a specific act, the offeror's inclusion of both a clearly drafted opt-out requirement and a warning that the customer's continued use will be construed as assent strengthens the support for assent." *Duling v. Mid Am. Credit Union*, 530 P.3d 737, 748 (Kan. Ct. App. 2022).[43]

---

[43] *See also Hrapczynski v. Bristlecone, Inc.*, No. 20-cv-06014, 2021 WL 3209852, at *5 (E.D. Pa. July 29, 2021) ("In Pennsylvania, acceptance of a contract 'may be

Here, Plaintiffs' applicable agreement with T-Mobile is T-Mobile's May 2023 T&Cs, and it is clear that Plaintiffs accepted the May 2023 T&Cs and agreed to be bound by them.  In April 2023, T-Mobile sent each Plaintiff an email notice of an update to T-Mobile's Terms and Conditions that would take effect on May 15, 2023.[44]  That notice included a link to access the May 2023 T&Cs on T-Mobile's website, where Plaintiffs could easily view the updated Terms and Conditions.[45]  It also plainly notified Plaintiffs that they would agree to be bound by the May 2023 T&Cs by using T-Mobile's services after May 15, 2023.[46]

Consistent with the email sent to Plaintiffs in April 2023, the May 2023 T&Cs themselves also clearly inform customers how to accept — or not to accept — the Terms and Conditions.[47]  They also notify customers of their arbitration agreement at the outset and then go on to include a detailed, mandatory arbitration provision

---

manifested by conduct as well as by words.'" (quoting *Selig v. Philadelphia Title Ins. Co.*, 111 A.2d 147, 151 (Pa. 1955))); *Shovel Transfer & Storage v. Pa. Liquor Control Bd.*, 739 A.2d 133, 139 (Pa. 1999); *Cochran v. Eason*, 180 S.E.2d 702, 704 (Ga. 1971) ("Assent to the terms of a contract may be given other then [sic] by signatures."); *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 36 (Nev. 2018) ("Though arbitration agreements often appear in conventional two-party contracts, they can also arise from other written records where signatures are not required.").

[44] Sanchez Decl. ¶ 10.

[45] *Id.*

[46] *Id.*

[47] *Id.* ¶ 11.

under a large, bolded header.[48]  Accordingly, all Plaintiffs were on notice of the May 2023 T&Cs, which contain a conspicuous, binding arbitration agreement and class action waiver.[49]   And all Plaintiffs accepted the May 2023 T&Cs by using T-Mobile's services after May 15, 2023.[50]  Plaintiffs are bound by the arbitration agreement contained in the May 2023 T&Cs, and their claims are not properly before the Court.

In fact, just last week, the Central District of California found that a plaintiff accepted the May 2023 T&Cs under these exact circumstances.  Ex. B, *Rendon v. T-Mobile USA, Inc.*, No. 2:24-cv-01666-SPG, slip op. at 5–6 (C.D. Cal. Aug. 30, 2024).  That court enforced the plaintiff's arbitration agreement after finding that T-Mobile had notified the plaintiff of the new May 2023 T&Cs via email, that the email contained links to the full May 2023 T&Cs, and that she continued using her service after May 15, 2023.  *Id.*[51]  The Court should reach a similar decision here.

Moreover, in addition to accepting the May 2023 T&Cs, Plaintiffs specifically agreed to the Terms and Conditions in place and agreed to arbitration in a number of other agreements with T-Mobile.  As shown above, Plaintiffs Oddo, Hyaduck,

---

[48] *Id.* ¶¶ 9,13.

[49] *Id.* ¶ 13.

[50] *Id.* ¶¶ 12, 42, 47, 51, 55.

[51] The *Rendon* court also noted that the plaintiff was bound by arbitration agreements in at least four signed EIPs.  Ex. B, *Rendon*, at 5–6.

and Dwyer signed Service Agreements with T-Mobile that incorporated the then-current Terms and Conditions and several other agreements that included an arbitration agreement and class action waiver.[52]  Plaintiff Kahhan had to accept T-Mobile's Terms and Conditions to activate his T-Mobile service in the first instance.[53]  And like all Plaintiffs, Kahhan agreed to the 2021 T&Cs when they were initially introduced.  T-Mobile records reflect that, at the very least, the 2021 T&Cs were delivered to him via multiple SMS text messages and on his T-Mobile invoices, and he accepted them by, among other things, continuing to use and pay for his T-Mobile service.[54]

Each version of T-Mobile's Terms and Conditions accepted by Plaintiffs (even prior to their acceptance of the May 2023 T&Cs) included an arbitration agreement and class action waiver.[55]  As noted above, each Plaintiff had the opportunity to opt out of arbitration and the class action waiver but none did.[56]  The scopes of those agreements were broad, requiring at a minimum that "any and all" claims or disputes, in any way "related to or concerning" the agreement, T-Mobile's

---

[52] Sanchez Decl. ¶¶ 41–53.

[53] *Id.* ¶¶ 7, 56.

[54] *Id.* ¶¶ 55, 57–58; *see id.* ¶¶ 18–23.

[55] *Id.* ¶¶ 13, 43, 48, 52; *id.* Exs. 1–20.

[56] *Id.* ¶¶ 59–66.

"services, devices or products" must be arbitrated.[57]  Plaintiffs' additional prior agreements also included independent arbitration obligations and class action waivers.[58]

Having established that Plaintiffs agreed to arbitrate the disputes with T-Mobile they attempt to assert here, for the additional reasons set forth below, Plaintiffs' claims cannot be heard in this Court, and any remaining issues with respect to arbitrability must be decided by an arbitrator.  With respect to Plaintiff Oddo, the Court should enter an order compelling his claims to arbitration in New Jersey and staying his claims here pending that arbitration.  9 U.S.C. § 3.  "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024).

With respect to the Non-Resident Plaintiffs, the Court should enter an order dismissing their cases in favor of arbitration in their respective states.  The May 2023 T&Cs and Plaintiffs' signed contracts require arbitrations to be held in the county and state in which the customer's billing address is located.[59]  The Non-Resident

---

[57] *Id.* ¶¶ 13.

[58] *Id.* ¶¶ 43–53, 56.

[59] *Id.* ¶ 14.

Plaintiffs' billing addresses are in their respective resident states.[60]  When parties

agree to arbitrate claims outside this district, this Court's practice is to dismiss the

claims in favor of arbitration in the proper forum.  *See, e.g.*, *Hautz Const.*, 2012 WL

5880370, at *17; *Launch Fitness*, 2013 WL 1288253, at *4.

### 3.    Plaintiffs' arbitration agreements delegate all remaining issues to the arbitrator.

When, as here, "an arbitration provision, by 'clear and unmistakable

evidence,' contains a valid delegation clause, the court's inquiry is limited to the first

step: determining whether a valid agreement to arbitrate exists."  *Smith v. Experian

Info. Sols., Inc.*, No. 22-06471, 2023 WL 6057377, at *3 (D.N.J. Sept. 14, 2023);

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("The delegation

provision is an agreement to arbitrate threshold issues concerning the arbitration

agreement.  We have recognized that parties can agree to arbitrate 'gateway'

questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or

whether their agreement covers a particular controversy.").

The May 2023 T&Cs contain just such a delegation provision, explicitly

granting the arbitrator the power to determine whether a dispute falls within the

scope of the arbitration agreement.[61]  Specifically, the May 2023 T&Cs delegate to

---

[60] *Id.* ¶ 6.

[61] *Id.* ¶ 16.

the arbitrators "the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either this Agreement or the arbitration clause, including whether any claim is subject to arbitration."[62] Moreover, the May 2023 T&Cs (and other prior Terms and Conditions that Plaintiffs accepted) also incorporate the AAA rules, which courts have repeatedly held constitute clear and unmistakable evidence of intent to delegate questions of arbitrability to the arbitrator.[63]  *See, e.g.*, *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103–04 (3d Cir. 2020)*; Benjamin v. KMB Plumbing & Elec.*, No. 3:20-cv-34, 2021 WL 2473845, at *5 (M.D. Pa. June 17, 2021); Ex. A, *Juarez*, at 13 (holding T-Mobile's arbitration agreement contained "clear and unmistakable evidence of the parties' intention to delegate issues of arbitrability").

Therefore, questions of arbitrability — including whether Plaintiffs' claims fall within the scope of the arbitration agreements and challenges to the enforceability of those agreements — must be decided by the arbitrator, not the Court. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.").  When considering the May 2023 T&Cs,

---

[62] *Id.*

[63] *Id.* ¶ 15, 43, 48, 52; *id.* Exs. 1–20.

multiple courts have agreed that the questions of scope and arbitrability are delegated to the arbitrator.  *See, e.g.*, Ex. B, *Rendon*, at 5–6; Ex. A, *Juarez*, at 8–14; *Bennett v. T-Mobile USA, Inc.*, No. 2:22-cv-01805-LK, 2024 WL 229580, at *7–10 (W.D. Wash. Jan. 22, 2024).

Regardless, even if this Court were to consider their scope, Plaintiffs' arbitration agreements encompass the claims here.  Strong federal public policy concerning the "liberal reading of arbitration agreements" dictates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 22 n.27, 24–25 (1983).  And it is well established that arbitration provisions that use the terms "any and all" claims and "related to" are broad in scope and create a "strong presumption" of arbitrability.   *Dupler v. Orbitz, LLC*, No. 18-2303-RGK (GSJx), 2018 WL 6038309, at *3 (C.D. Cal. July 5, 2008); *see also Varallo v. Elkins Park Hosp.*, 63 F. App'x 601, 602–03, n.1 (3d Cir. 2003) (compelling arbitration when plaintiff agreed "to submit to final and binding arbitration any and all claims and disputes that are related in any way to [her] employment or the termination of [her] employment"); *Chornomaz v. Bristol-Myers Squib Co.*, No. 22-5283 (MAS) (RLS), 2023 WL 4353542, at *4 (D.N.J. July 5, 2023) (quoting *Varallo*, 63 F. App'x at 603)*; Klutho v. JK Powerhouse LLC*, 542 F. Supp. 3d 893, 896 (E.D. Mo. 2021).

As noted above, Plaintiffs' arbitration agreements are broadly worded and cover, among other claims, "***any and all***" claims "related to or concerning" their T-Mobile agreements or T-Mobile's services, devices, or products, including any "billing disputes."[64]    Accordingly, Plaintiffs' claims, which center on their allegations concerning changes to their "plans for wireless cellphone service from T-Mobile,"[65] fall squarely within the scope of the arbitration agreements.   Other courts have previous held that similar claims are covered by the scope of the language in T-Mobile's Terms and Conditions. *See Clements*, 2024 WL 251326, at *6; *Middleton v. T-Mobile US, Inc.*, No. 1:20-cv-03276, 2022 WL 16828226, at *9 (E.D.N.Y. Aug. 24, 2022); *Gavrilovic v. T-Mobile USA, Inc.*, No. 21-12709, 2022 WL 1086136, at *3 (E.D. Mich. Mar. 25, 2022), *R. & R. adopted*, 2022 WL 1085674 (E.D. Mich. Apr. 11, 2022).

Finally, should Plaintiffs try to challenge the enforceability of their arbitration agreements, that again is an issue delegated to the arbitrator.[66]  But Plaintiffs would bear the burden of establishing unconscionability.  *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999); *Montgomery v. Bristol-Myers Squibb Co.*, No. 3:19-cv-19948-FLW-DEA, 2020 WL 3169373, at *3 (D.N.J. June 15, 2020)

---

[64] *See, e.g.*, *id.* ¶ 13; *id.* Exs. 1–20.

[65] *E.g.*, Compl. ¶ 4.

[66] Sanchez Decl. ¶¶ 15–16, 43–45, 48–49, 52–53; *id.* Exs. 1–20.

31

(quoting *Harris*, 183 F.3d at 181).   And courts throughout the country have consistently held T-Mobile's arbitration agreement enforceable over such challenges.  *See Saadeh v. T-Mobile USA, Inc.*, No. 2:21-cv-12871 (BRM) (JSA), 2022 WL 193968, at *4 (D.N.J. Jan. 21, 2022) ("[B]ecause the Court concludes Mr. Saadeh agreed to resolve all of his disputes with T-Mobile related to the T-Mobile Terms and Conditions by arbitration and declined to opt-out of arbitration, the Court must enforce the Arbitration Agreement."); *Clements*, 2024 WL 251326, at *5; *Frye*, 2022 WL 22628805, at *2–3 (same); Ex. A, *Juarez*, at 14; *Bennett*, 2024 WL 229580, at *15; *Ghouri v. AmSher Collection Servs., Inc*, No. 1:20-cv-00503, 2022 WL 11964565, at *5 (E.D. Va. Oct. 19, 2022) (enforcing the arbitration agreement in T-Mobile's 2020 Services Agreement); *Middleton*, 2022 WL 16828226, at *9 ("Because Middleton was on notice of T-Mobile's terms and assented to them, T-Mobile's motion to compel arbitration is GRANTED."); *Gavrilovic*, 2022 WL 1086136, at *4.

## IV.    CONCLUSION

The Non-Resident Plaintiffs' claims should be dismissed because the Court lacks jurisdiction over them.

In addition, Plaintiff Oddo's claims should be compelled to arbitration, and his claims in this proceeding should be stayed.  9 U.S.C. § 3; *Spizzirri*, 601 U.S. at 478.

Finally, to the extent that the Court finds it has personal jurisdiction over T-Mobile with respect to the Non-Resident Plaintiffs' claims, it should dismiss the Non-Residents' claims in favor of arbitration, consistent with its practice of dismissing claims in favor of arbitration in an out-of-state forum. *Hautz Constr.*, 2012 WL 5880370, at *17; *Launch Fitness*, 2013 WL 1288253, at *4.

**DATED: September 6, 2024.**

<div style="margin-left:auto">

*/s/ Reade W. Seligmann*

Reade W. Seligmann
**Alston & Bird LLP**
90 Park Avenue, 12th Floor
New York, NY 10016-1387
Tel: (212) 210-9453
reade.seligmann@alston.com

Kristine McAlister Brown
(*Pro Hac Vice forthcoming*)
**Alston & Bird LLP**
1201 West Peachtree Street
One Atlantic Center
Atlanta, GA 30309
Tel: 404-881-7584
kristy.brown@alston.com

*Counsel for Defendant*
*T-Mobile USA, Inc.*

</div>