# EXHIBIT A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND JUAREZ, ANTHONY FOSTER, ROXY LOPEZ, SHERRI SHERWOOD, and RACHEL GALARSA, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>  v.<br><br>T-Mobile USA Inc.,<br><br>              Defendant. | Case No. 2:24-cv-00700-SPG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT**<br>**[ECF NOS. 17, 18]** |

Before the Court is Defendant T-Mobile USA Inc.'s ("T-Mobile") Motion to Compel Arbitration. (ECF No. 17 ("Motion")). Plaintiffs Raymond Juarez, Anthony Foster, Roxy Lopez, Sherri Sherwood, and Rachel Galarsa ("Plaintiffs") oppose. (ECF No. 22 ("Opp.")). Also before the Court is Defendant's Motion to Dismiss. (ECF No. 18). The Court has read and considered the matters raised with respect to the motion and concluded that this matter is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby **GRANTS** Defendant's Motion and therefore **DENIES** Defendant's Motion to Dismiss as moot.

-1-

I. BACKGROUND

Plaintiffs are five California residents who have each entered into various Service Agreements and/or Lease Agreements with T-Mobile for various products and services, all of which included an arbitration provision. *See* (ECF No. 1-2 at 4–15 ("Compl.") ¶¶ 11–15; ECF No. 17-1 ("Sanchez Decl.") ¶¶ 3–16). Plaintiffs allege they "visited, used, or commenced transactions" through Defendant's websites and mobile applications, including but not limited to t-mobile.com and metrobyt-mobile.com (the "Platforms"). (Compl. ¶¶ 1, 11–15).

To use and benefit from Defendant's Platforms, visitors and users of the Platforms are informed that they "must agree" to T-Mobile's Website Terms of Use ("Website Terms"). (*Id.* ¶ 5). Plaintiffs allege that the Website Terms provide that users have agreed to be bound "simply by visiting, shopping on, or using" the Platforms. (*Id.*). Specifically, the Website Terms state: "[b]y visiting or using any T-Mobile website, portal, or extranet, or the service provided on any T-Mobile website, you agree to these Terms of Use." (*Id.*).

The Website Terms also provide that "[b]y visiting or using any T-Mobile web site, portal or extranet, or the services provided on any T-Mobile web site, you agree . . . [that] [y]ou must not post, upload, submit or request . . . any material that could harm T- Mobile's business, reputation, employees." (*Id.* ¶ 21). The Website Terms also advise that "T-Mobile can pursue claims against anyone who violates T-Mobile's rights in the [s]ubmissions" and that T-Mobile "reserve[s] the right, in [their] sole discretion, to terminate your access to the Site, or any portion thereof, at any time, without notice." (*Id.* ¶ 22).

Plaintiffs allege that the Website Terms contain a non-disparagement clause in violation of California Civil Code § 1670.8 and California's Unfair Competition Law. On December 20, 2023, Plaintiffs filed a Class Action Complaint in the Superior Court for the State of California, County of Los Angeles asserting these two claims on behalf of "all persons residing in California who, visited, used, or completed transactions on the Platforms," (the "Class")" and on behalf of a subclass of California residents "who

-2-

completed sales transactions on the Platforms ("Subclass")." (*Id.* ¶ 27). Plaintiffs seek damages, statutory penalties, and injunctive relief.

T-Mobile removed the case to this Court on January 25, 2024. (ECF No. 1). After multiple stipulations extending T-Mobile's time to answer the complaint, (ECF Nos. 13–16), on April 12, 2024, T-Mobile filed this Motion to Compel Arbitration, in addition to a Motion to Dismiss the Complaint. (ECF Nos. 17–18). Plaintiffs oppose. (ECF No. 22 ("Opp.")). *See also* (ECF No. 24 ("Reply")).

## II. LEGAL STANDARD

The Federal Arbitration Act (the "Act") provides that written arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). If an agreement is valid and covers the dispute at issue, "then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The Act reflects a "policy favoring arbitration" that aims, in light of "the judiciary's longstanding refusal to enforce agreements to arbitrate," to place arbitration agreements "upon the same footing as other contracts." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

A court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citation omitted). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron*, 207 F.3d at 1130. When

evaluating whether a party is bound by an arbitration agreement, federal courts "'apply ordinary state-law principles that govern the formation of contracts' to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Accordingly, an arbitration agreement may be unenforceable if "generally applicable contract defenses, such as fraud, duress, or unconscionability" apply. *Concepcion*, 563 U.S. at 339 (citation omitted).

When the parties have "clearly and unmistakably" delegated questions regarding arbitrability to the arbitrator, however, the court "need not conduct further inquiries beyond the existence of the arbitration agreement." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). "The presence of a delegation clause further limits the issues that a court may decide." *Id.* (quoting *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022)).

### III. DISCUSSION

T-Mobile seeks to compel all Plaintiffs' claims to arbitration based on Plaintiffs' signing of various T-Mobile agreements that purport to require arbitration. T-Mobile also claims that issues of arbitrability should likewise be sent to the arbitrator because the arbitration agreements contain clauses that delegate these gateway issues to the arbitrator. In opposition, Plaintiffs argue that Defendant has not submitted any admissible evidence to establish the existence of a valid agreement to arbitrate. Plaintiffs alternatively argue that (1) the question of arbitrability should be decided by this Court, not an arbitrator; (2) any arbitration provision is invalid under California Supreme Court law that prohibits waiver of the right to seek public injunctive relief in any forum; and (3) that the arbitration and delegation clauses are unconscionable.

#### A. Whether an Agreement to Arbitrate Exists

To determine "whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Patrick v. Running*

1    *Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024); *see also Caremark*, 43 F.4th at 1030
2    ("[A] court must resolve any challenge that an agreement to arbitrate was never formed,
3    even in the presence of a delegation clause."). Mutual assent is an "essential element" of
4    any contract, including an arbitration agreement. *Donovan v. RRL Corp.*, 26 Cal. 4th 261,
5    270 (2001); *see also Ramos v. Westlake Servs. LLC*, 242 Cal. App. 4th 674, 687–88 (2015)
6    (finding lack of mutual assent fatal to arbitration agreement's validity). The party seeking
7    to compel arbitration bears the burden of proving the existence of a valid arbitration
8    agreement by a preponderance of the evidence. *Olvera v. El. Pollo Loco*, 173 Cal. App.
9    4th 447, 453 (2009). While "mutual consent is a question of fact, whether a certain or
10   undisputed state of facts establishes a contract is a question of law for the court." *Deleon*
11   *v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (internal citation omitted).

12         Though this action challenges T-Mobile's Website Terms, the agreements
13   purportedly containing arbitration provisions are agreements outside of the Website Terms
14   between Plaintiffs and T-Mobile. Though Plaintiffs do not appear to dispute that they, in
15   fact, signed these agreements, Plaintiffs argue that Defendant has failed to submit any
16   evidence that "Defendant's Website Terms of Use contains any valid arbitration provision
17   within *that* specific agreement." (Opp. at 10). Plaintiffs also object on evidentiary grounds
18   to the declaration of T-Mobile's custodian of records, Ms. Sanchez, who submitted the
19   agreements between Plaintiffs and T-Mobile. The Court first considers Plaintiffs'
20   evidentiary objections.

21         1.    <u>Evidentiary Objections</u>

22         Plaintiffs acknowledge that a representative from T-Mobile, Ms. Sanchez, has
23   submitted a declaration with several documents that purport to be signed contracts between
24   each Plaintiff and T-Mobile. *See* (ECF No. 17-1 ("Sanchez Decl."); ECF No. 17-2). But
25   Plaintiffs claim that this evidence "ultimately fails to satisfy Defendant's threshold burden"
26   because Ms. Sanchez's declaration "lacks foundation [and] contains inadmissible hearsay."
27   (Opp. at 10). Defendant argues that Plaintiffs have not pointed to any particular statement
28   in Ms. Sanchez's declaration that is objectionable and asks the Court to overrule and

disregard the "boilerplate" objections on that basis alone. (Reply at 2). Alternatively, Defendants contend that Ms. Sanchez has personal knowledge of T-Mobile's business records practice and that the contracts are either not hearsay, as they are "offered as legally operative conduct," or fall within the business records exception to the rule against hearsay. (*Id.* at 3).

As an initial matter, for a "motion to compel arbitration, a court does not focus on the admissibility of the evidence's form, so long as the contents are capable of presentation in an admissible form at trial." *Brooks v. Greystar Real Estate Partners, LLC*, No. 23-cv-1729-LL-VET, 2024 WL 3489205, at *4 (S.D. Cal. July 19, 2024) (internal quotation marks and citation omitted). In any event, the Court overrules Plaintiffs' objections to Ms. Sanchez's declaration. First, Plaintiffs have failed to explain why the declaration lacks foundation, notwithstanding Ms. Sanchez's attestation that (1) she is employed by T-Mobile and her roles include review of litigation matters and acting as a custodian of records for T-Mobile, and (2) that the facts set forth in the declaration are based upon her personal knowledge. *See* (Sanchez Decl. ¶ 1). As such, the foundation objection is overruled. Defendants are similarly correct that the rule against hearsay is inapposite in this matter and that Plaintiffs' blanket objection fails to specify the purportedly hearsay statements. The contracts at issue are "written statement[s]," which themselves "affect[] the legal rights of the parties" or are "circumstance[s] bearing on conduct affecting their rights," which "fall[] outside the definition of hearsay." *United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir. 1993) (quoting Fed. R. Evid. 801, advisory committee notes); *see also Izett v. Crown Asset Mgmt., LLC*, No. 18-CV-05224-EMC, 2019 WL 4845575, at *4 (N.D. Cal. Oct. 1, 2019) (on a motion to compel arbitration, overruling hearsay objection to contracts containing arbitration clauses). The Court therefore overrules the hearsay objection.

-6-

### 2. Agreements at Issue

Defendant asks the Court to compel arbitration based on "27 arbitration agreements" between Plaintiffs and T-Mobile.[1] In response, Plaintiffs claim that these agreements are irrelevant to the "sole unlawful activity" arising out of the Website Terms and that the Website Terms do not include an arbitration provision. (Opp. at 10).

Plaintiffs Juarez, Lopez, Sherwood, and Foster executed agreements with T-Mobile that included the following statement: "**Disputes: T-Mobile requires ARBITRATION OF DISPUTES UNLESS YOU OPT-OUT WITHIN 30 DAYS OF ACTIVATION.** For details see www.T-Mobile.com/terms-conditions." (Sanchez Decl. ¶¶ 3–5, 8–9, ECF No. 17-1 at 8, 10, 13, 83).[2] The remaining named Plaintiff, Plaintiff Galarsa, signed an agreement providing in pertinent part that the parties will arbitrate "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS JUMP! ON DEMAND LEASE AGREEMENT, . . . DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES," unless Plaintiff Galarsa opted out within 30 days. (Sanchez Decl. ¶ 10, ECF No. 17-1 at 88–89).

Plaintiffs do not appear to dispute that these agreements exist or that each Plaintiff, in fact, signed his or her respective agreement. Though Plaintiffs repeatedly claim—and Defendant does not appear to dispute—that the Website Terms do not include an arbitration provision, Plaintiffs have not explained why the absence of an arbitration provision in the

---

[1] The Court considers only the most recent agreement as to each Plaintiff, including the following agreements: (1) on August 11, 2021, Plaintiff Juarez signed via DocuSign a T-Mobile Service Agreement, (Sanchez Decl. ¶ 3); (2) on August 24, 2021, Plaintiff Lopez signed via DocuSign a T-Mobile Service Agreement (*id.* ¶ 4); (3) on October 19, 2022, Plaintiff Sherwood executed a T-Mobile Service Agreement, (*id.* ¶ 5); (4) on June 3, 2023, Plaintiff Foster executed a T-Mobile Service Agreement, (*id.* ¶ 8); and (5) on December 22, 2022, Plaintiff Galarsa executed via DocuSign a lease agreement for a T-Mobile device, (*id.* ¶ 10).

[2] The agreement signed by Plaintiff Foster varied only slightly, italicized here for emphasis, stating that T-Mobile requires "*INDIVIDUAL BINDING* **ARBITRATION OF DISPUTES UNLESS YOU OPT-OUT WITHIN 30 DAYS OF ACTIVATION.**" (ECF No. 17-1 at 83 (italicized emphasis added)).

Website Terms essentially moots the other apparently valid agreements to arbitrate disputes between each Plaintiff and T-Mobile. Instead, Plaintiffs' argument relates to the scope of the arbitration agreement between each Plaintiff and T-Mobile—not whether there is an agreement. Based on these agreements and the lack of dispute regarding formation of these agreements, Defendant has met its burden of establishing that a valid agreement to arbitrate claims exists between each named Plaintiff and T-Mobile.

### B. Whether Issues of Arbitrability are Delegated to the Arbitrator

Because Defendant has met its burden to establish a valid agreement to arbitrate, the Court next considers whether Plaintiffs' claims of arbitrability must be compelled to arbitration. "[G]ateway" questions of arbitrability are "presumptively reserved for the court." *Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). These questions include "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Id.* Where, however, the parties delegated questions of arbitrability to the arbitrator through a "delegation clause," the court "need not conduct further inquiries beyond the existence of the arbitration agreement." *Fli-Lo Falcon*, 97 F.4th at 1194; *Caremark*, 43 F.4th at 1029 ("The presence of a delegation clause further limits the issues that a court may decide." (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010))). To send gateway issues to the arbitrator, there must be "clear and unmistakable" evidence that "the parties agreed to arbitrate arbitrability." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations and quotation marks omitted). Additionally, where a party specifically challenges the enforceability of the delegation provision, the court may consider that challenge before ordering compliance with the delegation provision. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009–10 (9th Cir. 2023).

Here, there is no dispute that the agreements signed by each named Plaintiff contain delegation provisions.[3] According to Defendants, the arbitrator—not the Court—must therefore decide the remaining challenges raised by Plaintiffs. But Plaintiffs contend that the presence of the delegation clauses is not the end of the Court's consideration, arguing that (1) the agreements do not contain the parties' clear and unmistakable intent to delegate arbitrability questions or, alternatively, (2) the delegation clauses are unconscionable and cannot be enforced.

### 1. Clear and Unmistakable Evidence to Arbitrate Gateway Issues

Plaintiffs argue that they are "ordinary consumers" and "should not be expected to understand the delegation provision to implicitly" preclude the Court from considering issues of "consumer rights." (Opp. at 14). Though Plaintiffs acknowledge the case law holding that "incorporation of AAA rules" into arbitration provisions is often considered evidence of the parties' clear and unmistakable intent to delegate gateway questions to the arbitrator, Plaintiffs claim that this Court should not apply that precedent to Plaintiffs because of the imbalance in sophistication of the parties.

Defendant responds that Plaintiffs are wrong on the facts and the law. Each agreement, according to Defendant, contains express delegation language "separate from and in addition to the incorporation of the AAA rules." (Reply at 10). Citing the 2015 Ninth Circuit opinion in *Brennan v. Opus Bank*, Defendant claims that incorporation of the AAA rules *does* constitute evidence of clear and unmistakable intent to delegate gateway issues to the arbitrator. (*Id.*) Though Defendant acknowledges that *Brennan* did not resolve issues of party sophistication, Defendant asks this Court to follow the "majority of district courts" that have held "*Brennan*'s holding applies equally to *non-sophisticated* parties." (*Id.* (emphasis in original)).

---

[3] Plaintiffs do maintain, however, that these agreements are not relevant to the issue here because they are not related to the Website Terms. *See* (Opp. at 13). For the reasons stated above, the Court disagrees and views this argument as one challenging the scope of the arbitration provisions.

In *Brennan*, the Ninth Circuit held "that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." 796 F.3d at 1130; *see also Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480–81 (9th Cir. 2024) ("[V]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013))). As both parties acknowledge, however, the Ninth Circuit "has not yet decided whether *Brennan*'s holding should extend to arbitration clauses in consumer contracts between a sophisticated entity and an average unsophisticated consumer." *Patrick*, 93 F.4th at 481; *Brennan*, 796 F.3d at 1131.[4]

Plaintiffs signed a variety of agreements to arbitrate. Plaintiff Foster signed an agreement containing T-Mobile's 2023 Terms and Conditions (the "2023 Terms"). The 2023 Terms provide that the "arbitrator will have the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either this Agreement or the arbitration clause, including whether any claim is subject to arbitration." (ECF No. 17-1 at 58). Plaintiffs Juarez, Lopez, and Sherwood signed agreements containing T-Mobile's 2021 Terms and Conditions (the "2021 Terms"). The 2021 Terms provide, in relevant part:

> [T]he Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below). . . .

---

[4] In *Brennan*, the Ninth Circuit stated: "our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." 796 F.3d at 1130–31 (citing cases).

> The arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced . . . . The AAA rules are available at www.adr.org.

(*Id.* at 19–20). Finally, Plaintiff Galarsa signed an agreement in which the arbitration provision contains substantially the same statement as the 2021 Terms. *See* (*id.* at 88–89).

The delegation provision in the 2023 Terms is an express statement that issues, including gateway issues such as "the existence, validity, or scope" of the agreement or "whether any claim is subject to arbitration," are reserved for the arbitrator. *See* (*id.* at 58). This language unmistakably delegates arbitrability to the arbitrator. *See Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (language referring to the "existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration" is unmistakable evidence of delegation); *see also Maybaum v. Target Corp.*, No. 2:22-cv-00687-MCS-JEM, 2022 WL 1321246, at *5 (C.D. Cal. May 3, 2022) ("This language unmistakably delegates arbitrability to the arbitrator by including the term 'validity.'"). Defendant has therefore met its burden to establish that there is clear evidence of delegation between Plaintiff Foster and T-Mobile.

The agreements signed by the other Plaintiffs, however, arguably present a closer call. The delegation provisions in those agreements delegate arbitrability primarily by incorporating the AAA rules. *See* (ECF No. 17-1 at 19–20, 88–89). The "vast majority of the circuits" however, and a sizable number—if not a majority—of district courts within the Ninth Circuit find incorporation of the AAA rules "constitutes clear and unmistakable evidence of the parties' intent" and that this rule is not expressly limited to "sophisticated parties or to commercial contracts." *Brennan*, 796 F.3d at 1130–31; *Patrick v. Running Warehouse, LLC*, No. 2:21-cv-09978-ODW (JEMx), 2022 WL 10584136, at *4 (C.D. Cal. Oct. 18, 2022) (collecting cases), *aff'd*, 93 F.4th 468 (9th Cir. 2024); *Fischer v. Kelly Servs. Glob., LLC*, No. 23-CV-1197 JLS (JLB), 2024 WL 382181, at *9 (S.D. Cal. Jan. 31, 2024)

(citing cases).[5] The Court finds these decisions persuasive. Further, while Plaintiffs argue that the delegation provisions are "inconspicuous" and "buried" in the agreements, (Opp. at 7), the Court disagrees. Each of the agreements signed by Plaintiffs Juarez, Lopez, Sherwood, and Galarsa contain bolded language emphasizing that all disputes are referred to an arbitrator, including enforcement of the arbitration agreement, and that Plaintiffs may opt-out of mandatory arbitration if they do so within 30 days of signing the agreement. While opt-out provisions are more frequently considered in unconscionability challenges,[6] here, the provisions suggest that consumers are invited—if not expected—to engage with the dispute provisions or otherwise accept the terms. Beyond stating that Plaintiffs are ordinary consumers, Plaintiffs have offered no other explanation as to why, in this case, they were unable to understand the delegation provision. *See Patrick*, 93 F.4th at 481 (affirming order compelling arbitrating and, without deciding the specific issue, noting that the "[p]laintiffs offered no evidence concerning their sophistication or lack thereof to the district court").

---

[5] *See also Acosta v. Brave Quest Corp.*, No. 2:23-CV-09581-SB-MAR, 2024 WL 3206986, at *3 (C.D. Cal. May 10, 2024) (discussing the "at least three occasions since Brennan" in which the Ninth Circuit considered sophistication and noting that "each time it found a clear and unmistakable delegation without deciding whether Brennan's rule applies to unsophisticated parties" (citing *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1062 (9th Cir. 2018) (reversing a district court's holding that *Brennan* did not apply because the individual plaintiffs were unsophisticated by finding that the individuals who purchased the insurance policy at issue were actually sophisticated)).

[6] *See also Fischer v. Kelly Servs. Glob., LLC*, No. 23-CV-1197 JLS (JLB), 2024 WL 382181, at *14 n.16 (S.D. Cal. Jan. 31, 2024) (observing that, "whether a party can avoid the enforcement of an unambiguous provision due to their lack of sophistication seems like a question of fairness more appropriately considered in an unconscionability inquiry" rather than the inquiry of clear and unmistakable evidence to delegate arbitrability); *see also Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1012 n.2 (S.D. Cal. 2017) (stating that an inquiry into a party's sophistication "may be better suited to a court's determination of whether a delegation clause is unenforceable because it is unconscionable"); *Razzaghi v. UnitedHealth Grp.*, No. SACV1801223AGJDEX, 2018 WL 7824552, at *2 (C.D. Cal. Sept. 17, 2018).

In the absence of binding precedent, and based on the arguments presented in this case, the Court declines to limit the *Brennan* rule to sophisticated parties. The Court, therefore, finds that the incorporation of the AAA rules in the context of the T-Mobile agreements at issue constitutes clear and unmistakable evidence of the parties' intention to delegate issues of arbitrability.

### 2. Whether Plaintiffs Have Properly Challenged the Delegation Provision as Unconscionable

Still, Plaintiffs contend that this Court should consider gateway issues of arbitrability because the delegation provision is "invalid, unenforceable, and unconscionable." (Opp. at 13). "[I]f a party specifically challenges [the enforceability of] the delegation provision" the court "must consider the challenge before ordering compliance with it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (cleaned up). To challenge a delegation provision, however, a party "must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to the motion to compel arbitration." *Id*. "[A] party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable." *Id*. at 1009–10. Defendant argues that, because Plaintiffs did "not direct their challenges specifically to the delegation clause" and do not "specify why each argument renders the *delegation clause* unenforceable," this Court should not consider Plaintiffs' remaining challenges, including the ones purporting to relate to the delegation clause. (Reply at 11) (emphasis in original). The Court agrees with Defendant.

Plaintiffs have failed to properly challenge the delegation provisions contained in the agreements. Plaintiffs are correct that they are allowed to challenge the delegation provisions "for the same reasons" they challenge the arbitration agreement as a whole, but they are wrong that they have sufficiently "specifi[ed] why each reason renders the specific provision unenforceable." *Id*. In their opposition brief, Plaintiffs simply incorporate the unconscionability arguments launched against the arbitration provision and class action

waiver. *See* (Opp. at 13). And upon review of the sections of Plaintiffs' brief that detail their unconscionability challenge, *see* (*id*. at 19–22), there is no specific argument regarding how the delegation provision—as opposed to the arbitration provision or class action waiver—is either procedurally or substantively unconscionable. *Cf. Bielski*, 87 F.4th at 1011 (finding the plaintiff properly challenged the delegation provision when he "crafted arguments directly addressing its unconscionability," including that the 'delegation provision [was] presented to users . . . on a take it or leave it basis, with no opportunity to opt out.'" (alterations in original)). Therefore, the Court declines to consider Plaintiffs' remaining arguments. Accordingly, the Court **GRANTS** Defendant's Motion.

### C. Whether to Stay or Dismiss

Defendant requests that the Court stay the action while Plaintiffs' claims proceed through arbitration. Section 3 of the FAA provides that, upon determining that an issue or issues are referable to arbitration, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). The Court thus grants Defendant's request for a stay pending arbitration.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **STAYS** the action. The parties are further **ORDERED** to submit status reports concerning the status of arbitration every 90 days. The Court further **DENIES** as MOOT Defendant's Motion to Dismiss Plaintiffs' Complaint.

**IT IS SO ORDERED.**

DATED: August 23, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE