## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ODDO, HARRY HYADUCK, SR., LARRY KAHHAN and GERALD DWYER, on Behalf of Themselves and All Other Persons Similarly Situated, | Civ. Action No. 2:24-cv-07719 (MEF/JRA) |
| *Plaintiffs*, | |
| v. | *Document filed electronically* |
| T-MOBILE USA, INC., | |
| *Defendant*. | |

## DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
## T-MOBILE'S MOTION TO COMPEL ARBITRATION

I, Judy Sanchez, declare:

1.      My name is Judy Sanchez.  I am over the age of 18 and am competent to make this declaration.  I am employed as a custodian of records for T-Mobile USA, Inc. ("T-Mobile"), working in Legal Affairs: Small Claims, Arbitration, Records in Albuquerque, New Mexico.  The facts set forth herein are based upon my personal knowledge, my familiarity with T-Mobile's policies and practices, and upon my review of business records of T-Mobile, which records were made by, or from information transmitted by, a person with knowledge of the event described therein, at or near the time of the event described, and are kept in the ordinary course of the regularly conducted business activity of such person and T-Mobile, and it is

the regular practice of that business activity to make such records.  If called as a witness to testify regarding these facts, I could and would do so competently.

## Background About T-Mobile

2.    T-Mobile is incorporated in Delaware and has its principal place of business in Washington.

3.    T-Mobile provides wireless communication services throughout the United States.

4.    T-Mobile acquired Sprint on April 1, 2020.  While Sprint continues to exist as a wholly-owned subsidiary of T-Mobile, service is provided to legacy Sprint customers under the T-Mobile name.

## Plaintiffs Are Current T-Mobile Customers

5.    T-Mobile's records reflect that Plaintiffs Oddo, Hyaduck, Dwyer, and Kahhan (collectively, "Plaintiffs") are current T-Mobile customers.

6.    Plaintiff Oddo's billing address is in New Jersey, Plaintiff Hyaduck's billing address is in Georgia, Plaintiff Dwyer's billing address is in Pennsylvania, and Plaintiff Kahhan's billing address is in Nevada.

7.    It is T-Mobile's practice and procedure to require customers to agree to T-Mobile's Terms and Conditions in effect at the time when the customer activates service.  T-Mobile will not activate service for a customer unless and until the customer agrees to the then-applicable Terms and Conditions.

2

## T-Mobile's 2023 Terms and Conditions

8.      From May 15, 2023 to the present, T-Mobile's May 2023 Terms and Conditions ("May 2023 T&Cs") have been in effect.  Attached hereto as **Exhibit 1** is a true and correct copy of T-Mobile's May 2023 T&Cs.

9.      The May 2023 T&Cs notify customers of the arbitration agreement in the very first unnumbered paragraph:

> Thanks for choosing T-Mobile! We are pleased that you selected us as your wireless provider. Please use this page as a reference for questions about your service and the terms and conditions of service that govern the service(s) you purchased from us. These Terms & Conditions ("T&Cs") contain important information about your relationship with us, including individual mandatory binding arbitration of disputes between us, instead of class actions or jury trials. By Accepting these T&Cs, you agree, on behalf of yourself, any person on your account, an Authorized User, and any person you allow to use the Services, Product, or your Device, to be bound by these provisions.

**Exhibit 1**, p. 1.

10.     In April 2023, T-Mobile sent all active T-Mobile account holders, including Plaintiffs, an email at the email addresses associated with their T-Mobile account that informed Plaintiffs T-Mobile's Terms and Conditions were being updated effective May 15, 2023.  A true and correct copy of this email is attached hereto as **Exhibit 2**.  The email stated that, by using T-Mobile's services after May 15, 2023, Plaintiffs were agreeing to the May 2023 T&Cs.  **Exhibit 2**.  The email

3

also included a link where Plaintiffs could access the May 2023 T&Cs on T-Mobile's website as well as a link to a Frequently Asked Questions page explaining the changes.  **Exhibit 2**.

11.    The May 2023 T&Cs notify customers how to accept – and not to accept – the May 2023 T&Cs:

> You accept these T&Cs by doing any of the following things:
>
> - giving us a written or electronic signature or confirmation, or telling us orally that you accept;
>
> - activating, using or paying for the Service or a Device; or
>
> - opening the Device box.

If you don't want to accept these T&Cs, don't do any of these things. **Exhibit 1**, p. 2.

12.    T-Mobile's records reflect that Plaintiffs Oddo, Hyaduck, Dwyer, and Kahhan used and paid for T-Mobile's services after May 15, 2023.

13.    The May 2023 T&Cs include a mandatory arbitration provision under the large, bolded header "**HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**" **Exhibit 1**, p. 6.  The arbitration provision states in pertinent part:

> By accepting these T&Cs, you are agreeing to resolve any dispute with us through individual binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit.

***Individualized Dispute Resolution and Arbitration.* YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES, OF ANY NATURE, INCLUDING TORT AND STATUTORY CLAIMS, IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD, ON AN INDIVIDUAL BASIS, THE SAME DAMAGES AN RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES**

This includes any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third- party vendors) whenever you also assert claims against us in the same proceeding.  You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below).

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**<u>Class and Mass Action Waiver</u>. YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS, REPRESENTATIVE, MASS, OR CONSOLIDATED ACTION. If you opt out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you.**

> **Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated, mass, or representative proceeding without having complied with the opt out requirements above.**

**Exhibit 1**, pp. 6-7, 9-10 (emphasis in original).

14.    The May 2023 T&Cs also contain a choice of law provision stating:

> This Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which your billing address in our records is located, without regard to the conflicts of laws rules of that state or jurisdiction. Foreign laws do not apply. Arbitration or court proceedings must be in the county and state or jurisdiction in which your billing address in our records is located, but not outside the U.S. or Puerto Rico.

**Exhibit 1**, p. 10.

15.    The May 2023 T&Cs also provide that "[t]he arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced, except to the extent any of those rules conflict with our agreement in these T&Cs, in which case these T&Cs will govern.  The AAA rules are available at www.adr.org."  **Exhibit 1**, p. 8.

16.    The May 2023 T&Cs also contain an express delegation provision providing that:

> The arbitrator will have the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either this Agreement or the arbitration clause, including whether any claim is subject to arbitration, provided that: (1) any dispute about

6

> whether a claim qualifies for small claims court will be resolved by that court, not by an arbitrator; and (2) a court will have the authority to determine whether the parties have complied with the informal dispute resolution procedures set out above and whether any claim you or we have filed in arbitration or in court is inconsistent with the Class and Mass Action Waiver included in these T&Cs.

**Exhibit 1**, p. 9.

### **T-Mobile's March 2021 Terms and Conditions**

17.     From March 1, 2021 to May 14, 2023, T-Mobile's March 2021 Terms and Conditions ("March 2021 T&Cs") were in effect.  Attached hereto as **Exhibit 3** is a true and correct copy of T-Mobile's March 2021 T&Cs.

18.     In anticipation of the March 1, 2021 update, T-Mobile sent notice of the new Terms and Conditions to all active T-Mobile customers, including all legacy Sprint customers.  T-Mobile sent notification of the March 2021 T&Cs via three different means.  First, T-Mobile sent e-mails to all primary account holders during the period February 24, 2021 through March 12, 2021.  These e-mails were delivered in English and Spanish depending on the customers' language preference and contained a link to the March 2021 T&Cs.  The e-mail sent to primary account holders stated:

> We've also updated our Terms and Conditions, effective March 1, 2021.  These updates relate to our network and dispute resolution practices.  By using your service after the effective date, you'll agree to the updated Terms and Conditions.

> We encourage you to read the **T-Mobile Privacy Notice** [website link] and the **Terms & Conditions** [website link]. If you have any questions, please email us at privacy@t-mobile.com, or call us toll-free at 888-211-4727.

19.    The website link directed the customer to the March 2021 T&Cs located at https://www.t-mobile.com/responsibility/legal/terms-and-conditions.

20.    Second, T-Mobile sent an SMS text message to all active service lines (primary account holder and all active phone numbers on the account) between March 9, 2021 and April 2, 2021. Again, T-Mobile sent the SMS in both English and Spanish depending on the customers' language preference. The SMS stated "We're updating our Terms & Conditions. Visit t-mo.co/terms15 for details. The website link directed the customer to the March 2021 T&Cs.

21.    Third, T-Mobile provided every customer with notification of the updated 2021 Terms and Conditions on their first bill following the update. If the customer opted into electronic billing, the notice was provided on the e-bill. If the customer received paper bills, the notification appeared on the paper bill. The notice on the bills provided the website address to access the March 2021 T&Cs.

22.    The March 2021 T&Cs notified customers how to accept – and not to accept – the March 2021 T&Cs:

You accept these T&Cs by doing any of the following things:

8

- giving us a written or electronic signature or confirmation, or telling us orally that you accept;

- activating, using or paying for the Service or a Device; or

- opening the Device box.

If you don't want to accept these T&Cs, don't do any of these things.

**Exhibit 3**, p. 2.

23.    T-Mobile's records reflect that Plaintiffs Oddo, Hyaduck, Dwyer, and Kahhan used and paid for T-Mobile's services after March 1, 2021.

<u>**Previous Terms and Conditions**</u>

24.    From September 1, 2020 to February 28, 2021, T-Mobile's September 2020 Terms and Conditions were in effect.  Attached hereto as **Exhibit 4** is a true and correct copy of the September 2020 Terms and Conditions.

25.    From June 2, 2019 through August 31, 2020, T-Mobile's June 2019 Terms and Conditions were in effect.  Attached hereto as **Exhibit 5** is a true and correct copy of the June 2019 Terms and Conditions.

26.    From August 22, 2018 through June 1, 2019, T-Mobile's August 22, 2018 Terms and Conditions were in effect.  Attached hereto as **Exhibit 6** is a true and correct copy of the August 22, 2018 Terms and Conditions.

27.    From August 10, 2018 through August 21, 2018, T-Mobile's August 10, 2018 Terms and Conditions were in effect.  Attached hereto as **Exhibit 7** is a true and correct copy of the August 10, 2018 Terms and Conditions.

28.    From September 20, 2017 through August 9, 2018, T-Mobile's September 2017 Terms and Conditions were in effect.  Attached hereto as **Exhibit 8** is a true and correct copy of the September 2017 Terms and Conditions.

29.    From September 1, 2016 to September 19, 2017, T-Mobile's September 2016 Terms and Conditions were in effect.  Attached hereto as **Exhibit 9** is a true and correct copy of the September 2016 Terms and Conditions.

30.    From March 17, 2016 through August 31, 2016, T-Mobile's March 2016 Terms and Conditions were in effect.  Attached hereto as **Exhibit 10** is a true and correct copy of the March 2016 Terms and Conditions.

31.    From February 17, 2016 through March 16, 2016, T-Mobile's February 2016 Terms and Conditions were in effect.  Attached hereto as **Exhibit 11** is a true and correct copy of the February 2016 Terms and Conditions.

32.    From January 25, 2016 through February 16, 2016, T-Mobile's January 2016 Terms and Conditions were in effect.  Attached hereto as **Exhibit 12** is a true and correct copy of the January 2016 Terms and Conditions

33.    From November 14, 2015 through January 24, 2016, T-Mobile's November 2015 Terms and Conditions were in effect.  Attached hereto as **Exhibit 13** is a true and correct copy of the November 2015 Terms and Conditions.

34.    From June 12, 2015 through November 13, 2015, T-Mobile's June 2015 Terms and Conditions were in effect.  Attached hereto as **Exhibit 14** is a true and correct copy of the June 2015 Terms and Conditions.

35.    From March 18, 2015 through June 11, 2015, T-Mobile's March 2015 Terms and Conditions were in effect.  Attached hereto as **Exhibit 15** is a true and correct copy of the March 2015 Terms and Conditions.

36.    From November 10, 2014 through March 17, 2015, T-Mobile's November 2014 Terms and Conditions were in effect.  Attached hereto as **Exhibit 16** is a true and correct copy of the November 2014 Terms and Conditions.

37.    From March 27, 2014 through November 9, 2014, T-Mobile's March 2014 Terms and Conditions were in effect.  Attached hereto as **Exhibit 17** is a true and correct copy of the March 2014 Terms and Conditions.

38.    From October 20, 2013 through March 26, 2014, T-Mobile's October 2013 Terms and Conditions were in effect.  Attached hereto as **Exhibit 18** is a true and correct copy of the October 2013 Terms and Conditions.

39.    From December 30, 2011 to October 19, 2013, T-Mobile's December 2011 Terms and Conditions were in effect.  Attached hereto as **Exhibit 19** is a true and correct copy of the December 2011 Terms and Conditions.

40.    From July 24, 2011 to December 29, 2011, T-Mobile's July 2011 Terms and Conditions were in effect.  Attached hereto as **Exhibit 20** is a true and correct copy of the July 2011 Terms and Conditions.

## Plaintiff Christopher Oddo

41.    T-Mobile's records reflect that Plaintiff Christopher Oddo is a current T-Mobile customer who first activated his service on or around December 14, 2011.

42.    T-Mobile's records reflect that Plaintiff Oddo paid for and used T-Mobile services after March 1, 2021 and May 15, 2023.

43.    T-Mobile's records reflect that Plaintiff Oddo signed a Service Agreement on March 2, 2017.  Attached as **Exhibit 21** is a true and correct copy of the March 2, 2017 Service Agreement that Plaintiff Oddo signed.[1]  This Service Agreement informed Plaintiff Oddo that T-Mobile requires binding arbitration of disputes unless he opts out of arbitration within a specific time period.  **Exhibit 21**. This Service Agreement also explained that Plaintiff Oddo was agreeing to T-Mobile's Terms and Conditions and provided the website and phone number to

---

[1] Plaintiffs' contracts attached as exhibits to this Declaration contain personally identifiable information.  Pursuant to Rule 5.3, T-Mobile has filed these documents under seal in unredacted form and will move to seal them at the appropriate time.

access the then-current Terms and Conditions. **Exhibit 21**. Those Terms and Conditions included an arbitration agreement, class action waiver, and instructions on how to opt out of arbitration. **Exhibit 9**, pp. 13-16. Those Terms and Conditions also provided that the Federal Arbitration Act ("FAA") governed the arbitration agreement, incorporated the rules of the American Arbitration Association ("AAA"), and required arbitrations to be held in the county and state in which the customer's billing address was located. **Exhibit 9**, pp. 14-15, 17.

44.     T-Mobile's records reflect that Plaintiff Oddo signed six JUMP! On Demand Lease Agreements ("Lease Agreements") with T-Mobile. Plaintiff Oddo signed these Lease Agreements on October 24, 2019 (**Exhibit 22)**, August 12, 2018 (**Exhibit 23**), March 31, 2017 (**Exhibit 24**), October 17, 2016 (**Exhibit 25**), September 21, 2016 (**Exhibit 26**), and August 10, 2016 (**Exhibit 27**). True and correct copies of these Lease Agreements are attached hereto as **Exhibit 22** through **Exhibit 27**. The Lease Agreements contained (1) an arbitration agreement; (2) an option to opt out of the arbitration provision within a specific time period; and (3) a class action waiver. **Exhibits 22-27**. The Lease Agreements also provided that the FAA applied to the arbitration agreement, incorporated the AAA rules, and required arbitrations to be held in the county and state in which the customer's billing address was located. **Exhibits 22-27**.

45.     T-Mobile's records reflect that Plaintiff Oddo signed five Equipment

Installment Plans ("EIPs") EIPs with T-Mobile. Oddo signed these EIPs on November 16, 2021 (two EIPs) (**Exhibit 28** and **Exhibit 29**), October 19, 2021 (**Exhibit 30**), April 27, 2021 (**Exhibit 31**), and November 8, 2017 (**Exhibit 32**). True and correct copies of these EIPs are attached hereto as **Exhibit 28** through **Exhibit 32**. These EIPs contained: (1) an arbitration agreement; (2) an option to opt out of the arbitration provision within a specific time period; and (3) a class action waiver. **Exhibits 28-32**. These EIPs also provided that the FAA applied to the arbitration agreement, incorporated the AAA rules, and required arbitrations to be held in the county and state in which the customer's billing address was located. **Exhibits 28-32**.

### **Plaintiff Harry Hyaduck**

46.    T-Mobile's records reflect that Plaintiff Harry Hyaduck is a current T-Mobile customer, who migrated from Sprint on or around January 14, 2021.

47.    T-Mobile's records reflect that Plaintiff Hyaduck paid for and used T-Mobile services after March 1, 2021 and May 15, 2023.

48.    T-Mobile's records reflect that Plaintiff Hyaduck signed two Service Agreements with T-Mobile. Plaintiff signed these Service Agreements on January 14, 2021 (**Exhibit 33**) and January 15, 2021 (**Exhibit 34**). Attached as **Exhibit 33** and **Exhibit 34** are true and correct copies of the Service Agreements that Plaintiff Hyaduck signed. These Service Agreements informed him that T-Mobile requires

14

binding arbitration of disputes unless he opts out of arbitration. **Exhibit 33** and **Exhibit 34**. These Service Agreements also informed Plaintiff Hyaduck that: (1) he was agreeing to T-Mobile's Terms and Conditions and provided the website and phone number to access the then-current Terms and Conditions. **Exhibit 33** and **Exhibit 34**. Those Terms and Conditions included an arbitration agreement, class action waiver, and instructions on how to opt out of arbitration. **Exhibit 4**, pp. 4-7. They also provided that the FAA applied to the arbitration agreement, incorporated the AAA rules, and required arbitrations to be held in the county and state in which the customer's billing address was located. **Exhibit 4**, 4-6, 32.

49.    T-Mobile's records reflect that Plaintiff Hyaduck signed two EIPs with T-Mobile on January 15, 2021. True and correct copies of these EIPs are attached hereto as **Exhibit 35** and **Exhibit 36**. These EIPs contained: (1) an arbitration agreement; (2) an option to opt out of the arbitration provision within a specific time period; and (3) a class action waiver. **Exhibits 35-36**. These EIPs also provided that the FAA applied to the arbitration agreement, incorporated the AAA rules, and required arbitrations to be held in the county and state in which the customer's billing address was located. **Exhibits 35-36**.

### **Plaintiff Gerald Dwyer**

50.    T-Mobile's records reflect that Plaintiff Gerald Dwyer is a current T-Mobile customer, who first activated service on or around August 26, 2017.

51.     T-Mobile's records reflect that Plaintiff Dwyer paid for and used T-Mobile services after March 1, 2021 and May 15, 2023.

52.     T-Mobile's records reflect that Plaintiff Dwyer signed a Service Agreement on August 26, 2017, a true and correct copy of which is attached hereto as **Exhibit 37**.  The Service Agreement informed Plaintiff Dwyer that T-Mobile requires binding arbitration of disputes unless he opts out of arbitration within a specific time period.  **Exhibit 37**.  The Service Agreement also informed him that he was agreeing to T-Mobile's Terms and Conditions and provided the website and phone number to access the then-current Terms and Conditions.  **Exhibit 37**.  Those Terms and Conditions included an arbitration agreement, class action waiver, and instructions on how to opt out of arbitration.  **Exhibit 9**, pp. 13-16.  They also provided that the FAA applied to the arbitration agreement, incorporated the AAA rules, and required arbitrations to be held in the county and state in which the customer's billing address was located.  **Exhibit 9**, pp. 14-15, 17.

53.     T-Mobile's records reflect that Plaintiff Dwyer signed two EIPs with T-Mobile on December 31, 2019, true and correct copies of which are attached hereto as **Exhibit 38** and **Exhibit 39**.  These EIPs contained: (1) an arbitration agreement; (2) an option to opt out of the arbitration provision within a specific time period; and (3) a class action waiver.  **Exhibits 38-39**.  They also provided that the FAA applied to the arbitration agreement, incorporated the AAA rules, and required

arbitrations to be held in the county and state in which the customer's billing address was located.  **Exhibits 38-39**.

### Plaintiff Larry Kahhan

54.    T-Mobile's records reflect that Plaintiff Larry Kahhan is a current T-Mobile customer, who first activated service on or around February 22, 2013.

55.    T-Mobile's records reflect that Plaintiff Kahhan paid for and used T-Mobile services after March 1, 2021 and May 15, 2023.

56.    Based on T-Mobile's business practices and procedures, Plaintiff Kahhan had to agree to T-Mobile's Terms and Conditions in effect when he activated his service.  T-Mobile would not have activated Plaintiff Kahhan's service absent his agreement.  Those Terms and Conditions included an arbitration agreement, class action waiver, and instructions on how to opt out of arbitration.  **Exhibit 19**, pp. 2-5.  They also provided that the FAA applied to the arbitration agreement, incorporated the AAA rules, and required arbitrations to be held in the county and state in which the customer's billing address was located.  **Exhibit 19**, pp. 3-4, 24.

57.    As the primary account holder on his T-Mobile account, T-Mobile sent Plaintiff Kahhan multiple forms of notification of the update of T-Mobile's Terms and Conditions effective March 1, 2021, as discussed generally in Paragraphs 17-20, *supra*.  T-Mobile's records reflect multiple SMS text messages containing a website link that directed him to the March 2021 T&Cs were delivered to Plaintiff

Kahhan. In addition, attached hereto as **Exhibit 40** is a true and correct copy of the first and last pages of Plaintiff Kahhan's bill containing the notification of the March 2021 T&Cs.

58.    T-Mobile's records indicate that Plaintiff Kahhan activated his T-Mobile service at a Costco store.  As with other T-Mobile authorized retailers, Plaintiff Kahhan would have been required to sign a written agreement at the Costco store that incorporated by reference the T-Mobile Terms and Conditions in effect at the time in order to activate service.  At present, T-Mobile has been unable to track down any signed, written agreement from Plaintiff Kahhan given the lack of information that he has provided about the Costco location where he activated his T-Mobile service.

### Plaintiffs Did Not Opt Out.

59.    The Service Agreements that Plaintiffs executed informed Plaintiffs that they could opt out of arbitration, incorporated by reference the T-Mobile Terms and Conditions that were in effect at the time the contracts were signed, and provided the website and phone number to access the then-current Terms and Conditions.  *See* **Exhibits 21**, **33-34**, **37**.

60.    All T-Mobile Terms and Conditions, including those that were in effect at the time Plaintiffs' contracts were signed, provided the right to opt out of arbitration within a specified time period.  *See* **Exhibits 1**, **3-20**.  For example, the

May 2023 T&Cs provide an opt-out provision that states:

> **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE EARLIER OF THE DATE YOU PURCHASED A PRODUCT OR DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE (the "Opt Out Deadline").** You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or online at www.T-Mobiledisputeresolution.com. **Any opt-out received after the Opt Out Deadline will not be valid and you will be required to pursue your claim in arbitration or small claims court.**

**Exhibit 1**, p. 7 (emphasis in original).

61.     The EIPs and Lease Agreements that Plaintiffs signed also provided an option to opt out of arbitration within a specific time period.  *See* **Exhibits 22-32**, **35-36**, **38-39**.

62.     In the ordinary course of business, T-Mobile records and retains requests to opt out made in accordance with its Terms and Conditions and its contracts.

63.     T-Mobile's records reflect that it has not received any opt-out requests from or on behalf of Plaintiff Oddo.

64.     T-Mobile's records reflect that it has not received any opt-out requests from or on behalf of Plaintiff Hyaduck.

65.    T-Mobile's records reflect that it has not received any opt-out requests from or on behalf of Plaintiff Dwyer.

66.    T-Mobile's records reflect that it has not received any opt-out requests from or on behalf of Plaintiff Kahhan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 6, 2024.

*Judy Sanchy*

Judy Sanchez