May 9, 2025

**VIA ECF**

Honorable Jose R. Almonte, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street Room 4015
Newark, NJ 07101

      Re:    *Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Civ. Action No. 2:24-cv-07719 (MEF/JRA)

Dear Judge Almonte,

      In accordance with the Court's March 27, 2025 order, the parties respectfully submit this revised dispute letter identifying the specific discovery requests in dispute and the parties' positions as it relates to each request. The discovery requests at issue here were served by Plaintiffs following this Court's January 27, 2025 order directing the parties to proceed with "limited discovery only as to whether the named Plaintiffs in this matter executed valid opt-outs of Defendant's arbitration agreement." Plaintiffs served 45 separate Requests for Production ("Requests") following that order. Significant disputes have arisen as to whether those Requests are relevant or proper at this juncture. For the ease of reference, the parties have grouped the requests and set forth their respective positions below.

      **Dispute No. 1: Documents concerning revisions to T-Mobile's Arbitration Provision and Opt Out Provision**

      **REQUEST NO. 11:** *Documents sufficient to show when the Arbitration Provision was added to the Terms and Conditions.*

      **REQUEST NO. 12:** *Documents sufficient to show when the Opt Out was added to the Terms and Conditions.*

      **PLAINTIFFS' POSITION:** The Court ordered that limited discovery was permitted as to "whether the named Plaintiffs in this matter executed valid opt-outs of Defendant's arbitration agreement." See ECF No. 36. This inquiry starts with whether Plaintiffs received and accepted the Terms and Conditions or the arbitration provision. T-Mobile ignores this and just assumes that Plaintiffs accepted the Terms and Conditions. To determine whether Plaintiffs validly opted out of T-Mobile's arbitration agreement, the first inquiry is: are Plaintiffs bound by the Terms and Conditions? This analysis requires the documents sought by Plaintiffs' requests. Further, the discovery requests seek documents relating to how T-Mobile evaluates the opt outs, how the opt out process works, the number of opt outs received, etc. All these categories of documents go to determining if Plaintiffs validly opted out.

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

The only document produced by T-Mobile is a self-created spreadsheet containing information T-Mobile alleges shows when Plaintiffs opted out. This limited spreadsheet raised more questions than answers.

Considering that T-Mobile claims that the arbitration provision and opt out terms are enforceable, it is highly relevant when those provisions were added to the Terms and Conditions. T-Mobile's objection that these documents have no relevance to the issues is unavailing because when those terms were added and if Plaintiffs accepted those terms is the central issue before the Court.

**DEFENDANT'S POSITION:**

T-Mobile has produced every version of the Terms and Conditions that has been in effect from December 14, 2011, which is the earliest date any Plaintiff became a T-Mobile customer, to the present. The Terms and Conditions in effect as of December 14, 2011 already contained an Arbitration Provision and Opt Out Provision, and each version of T-Mobile's Terms and Conditions since that time has contained an Arbitration Provision and Opt Out provision. The question of what point in time prior to December 14, 2011 the Arbitration Provision and Opt Out Provision were added to T-Mobile's Terms and Conditions has no bearing or relevance to the question of whether the named Plaintiffs in this matter executed valid opt-outs of Defendant's arbitration agreement, and the Requests therefore fall outside of the limited scope of discovery allowed by the Court.

**Dispute No. 2: Whether T-Mobile's objections that the Requests exceed the scope of allowed discovery, seek documents irrelevant to determining whether Plaintiffs executed valid opt-outs, and are overly burdensome are valid.**

> **REQUEST NO. 13:** *All policies and procedures that refer to or relate to the Arbitration Provision.*
>
> **REQUEST NO. 14:** *All policies and procedures that refer to or relate to distributing updated Terms and Conditions to customers.*
>
> **REQUEST NO. 15:** *Documents that refer or relate to how customers accept the Terms and Conditions.*
>
> **REQUEST NO. 18:** *Documents that refer or relate to the Opt Out provision of the Terms and Conditions.*
>
> **REQUEST NO. 22:** *All Communications between Defendant and any employee that refers or relates to the Opt Out provision.*
>
> **REQUEST NO. 23:** *All Communications between Defendant and any employee that refers or relates to the Arbitration Provision.*
>
> **REQUEST NO. 24:** *All Communications between Defendant and any employee that refers or relates to the Terms and Conditions.*

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

> **REQUEST NO. 25:** *Copies of all documents that refer to, relate to, or reflect any other lawsuits, claims, or complaints filed against Defendant concerning the Arbitration Provision or Opt Out provision.*
>
> **REQUEST NO. 26:** *All Communications between Defendant's employees that refer or relate to the arbitration provision in the Terms and Conditions.*
>
> **REQUEST NO. 27:** *All Communications between Defendant's employees that refer or relate to the Opt Out provision in the Terms and Conditions.*
>
> **REQUEST NO. 40:** *All documents that refer or relate to the Settlement Administrator identified in Exhibits A – D.*
>
> **REQUEST NO. 45:** *Documents sufficient to show whether a customer must Opt Out each time the Terms and Conditions are updated.*

**PLAINTIFFS' POSITION:** Parties must specifically explain the burden for responding to discovery requests. Rule 26 requires that objections to discovery requests be stated with specificity and supported by detailed explanations. See FRCP 26. General objections that a request is overly broad, unduly burdensome, or irrelevant are insufficient and result in the waiver of the objection. See Younes v. 7-Eleven, Inc. 312 F.R.D. 692 (2015)(court struck 7-Eleven's boilerplate objections to an interrogatory as overly broad, unduly burdensome, irrelevant, and confidential, emphasizing that such general objections are inappropriate and result in waiver). T-Mobile's Preliminary Statement and General Objections to Plaintiffs' discovery requests are improper, not permitted, and violative of Rule 34. See Fed. R. Civ. P. 34 (b)(2)(B)–(C). Moreover, Rule 26 requires production of ESI unless "the party resisting discovery shown that the information in question is not *reasonably* accessible." Stinson v. City of New York, 2015 WL 4610422, at *4 (S.D.N.Y. July 23, 2015). To establish that producing responsive documents would be too burdensome, the responding party must provide specific evidence detailing the nature of the burden. This includes information such as the number of records responsive to the requests, the time and cost involved in compiling the information, and how complying with the document requests would interfere with business operations. See In re Novo Nordisk Securities Litigation, 530 F.Supp.3d 495 (2021). Generalized allegations of harm or burden without specificity and supporting proof are insufficient to sustain an objection to the discovery. See Justiano v. G4S Secure Solutions, Inc., 291 F.R.D. 80 (2013).

As set forth above, T-Mobile assumes that Plaintiffs are bound by the Terms and Conditions without having proven that fact. Plaintiffs' position is that the Terms and Conditions are not enforceable so neither the arbitration provision nor opt out apply to Plaintiffs' claims. Here, T-Mobile offers boilerplate objections for why the documents should not be produced. Those objections should be ignored. In addition, although T-Mobile claims that responding to the requests would be too burdensome, T-Mobile only does so in a conclusory manner that lacks any of the specific evidence necessary to sustain its objection.[1] T-Mobile has failed to state what efforts it took to search for responsive

---

[1] This argument also applies to Requests 6, 7, 37, and 38.

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

documents, how many documents are responsive, and the cost of producing those documents. All T-Mobile's arguments for why the documents should not be produced fail.

Because the requested documents are relevant to Plaintiffs' defenses to T-Mobile's motion to compel arbitration, including that Plaintiffs' opt outs were valid, the documents must be produced.

Finally, T-Mobile's assertion that certain issues have been delegated to an arbitrator has no bearing on these issues because there has been no determination that Plaintiffs are subject to arbitration. Moreover, the Court did not deny Plaintiffs' request for arbitration related discovery as alleged by T-Mobile.

**DEFENDANT'S POSITION:**

Each of the requests in this category seeks information concerning policies, practices, internal communications, and/or data regarding T-Mobile's contract terms and opt out procedures. None of these requests specifically references or relates to the Plaintiffs in this lawsuit, and the requests all fall far outside the scope of the Court's "limited discovery only as to whether the named Plaintiffs in this matter executed valid opt-outs of Defendant's arbitration agreement." Indeed, these requests are not relevant to assessing the validity of Plaintiffs' attempts to opt out of arbitration, and they also are overly broad and unduly burdensome. As just one example, Plaintiffs cannot credibly assert that Request No. 25, which seeks "[c]opies of all documents that refer to, relate to, or reflect any other lawsuits, claims, or complaints filed against Defendant concerning the Arbitration Provision or Opt Out Provision," has any bearing on the validity of Plaintiffs' own opt out attempts.

Rather, all of the information needed to demonstrate the untimeliness – and hence invalidity – of Plaintiffs' attempts to opt out in June 2024 has already been provided to Plaintiffs or is already in Plaintiffs' possession. ***First***, Defendant has produced Plaintiffs' executed agreements, as well as the incorporated Terms and Conditions in effect when Plaintiffs executed their agreements. These various contractual documents set forth the requirements Plaintiffs had to satisfy to validly opt out of arbitration, including the deadline for doing so. ***Second,*** Plaintiffs attached exhibits (the "Exhibits") to their Requests that reflect the dates on which Plaintiffs submitted their opt-out attempts – June 2024, long after their contractual deadline for doing so. *See* Requests, Exs. A–D. T-Mobile also produced extracted data that confirms the dates Plaintiffs submitted opt-out requests. These documents are all the Court needs to determine the issue of whether Plaintiffs validly opted out of their arbitration obligations when it is ultimately before the Court. Plaintiffs did not opt out in time, and with this prima facie evidence that Plaintiffs are bound to arbitration, there should be no further discovery. *See Young v. Experian Info. Sols, Inc.*, 119 F.4th 314, 320 (3d Cir. 2004) (discovery addressing a motion to compel arbitration is unnecessary when no factual dispute exists as to the existence of the arbitration agreement).

Moreover, these requests sweep broadly to seek information that does not relate to contract formation for the Plaintiffs but instead more generally relates to T-Mobile's arbitration agreements. This discovery is improper for two reasons. ***First,*** the District

4

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

Court already denied Plaintiffs' request for arbitration-related discovery such as this on October 31, 2024. ECF 21. **Second,** Plaintiffs' arbitration agreements include a broad delegation of authority to the arbitrator to determine any issues relating to arbitrability – that is, threshold issues relating to the arbitration agreement itself, including enforceability. *See* ECF 11-1, pp. 28–30. As a result, the only issue here that will be before the Court when T-Mobile's Motion to Compel Arbitration is ultimately decided is whether Plaintiffs entered into arbitration agreements with T-Mobile. And these requests do not even go to contract formation; at most they go to the issues of arbitrability and enforceability that have been delegated to the arbitrator. As such, it is improper to allow Plaintiffs to pursue discovery on issues that belong in arbitration rather than in Court. *See, e.g.*, *Phillips v. Bestway Rental, Inc.*, 2013 WL 832306, at *3 (N.D. Miss. Mar. 6, 2013), *aff'd*, 542 F. App'x 410 (5th Cir. 2013) (denying requested discovery because delegation clause foreclosed relevance of unconscionability discovery).

Finally, each of these requests is overbroad, and T-Mobile would be unduly burdened by responding to them. These requests seek broad categories of "documents" and "communications," which Plaintiffs expansively define to capture virtually any tangible item, material, or correspondence over a twenty-three-year period. *See* Requests ¶¶ 1, 13 19 (setting the relevant time period and defining terms). As just one example, Request No. 24 seeks "*all*" "communications" between T-Mobile's employees about T-Mobile's Terms and Conditions, which would include every "letter, memorandum, telegram, email or telex, [and] oral contact in face-to-face meetings, telephone conversations or otherwise" about any aspect of the Terms and Conditions going back to 2000. Requests ¶ 13 (emphasis added). It would be impossible for T-Mobile to identify and collect all such communications. The substantial burden of responding to these requests, which again have nothing to do with whether Plaintiffs in this matter validly opted out of their arbitration agreements, would warrant denial of these request even if full-blown merits discovery had commenced. But these are particularly improper and outside the Court's narrow authorization of discovery here.

**Dispute No. 3: Whether documents showing non named Plaintiff customers' actions are discoverable under the Court's January 27, 2025 order:**

> **REQUEST NO. 16:** *Documents sufficient to show how many customers click on the links provided in the emails sent to customers regarding updated Terms and Conditions.*
>
> **REQUEST NO. 17:** *Documents sufficient to show how many customers have opted out of the Terms and Conditions.*

**PLAINTIFFS' POSITION:** Discovery is not limited to only the transactions involving Plaintiffs. See Cox v. Chrysler Grp., LLC, 2015 WL 5771400, *15 (D.N.J. Sept. 30, 2015)(plaintiff has standing to bring claims regarding vehicles they did not purchase); Where, as here, "the basis for the Plaintiffs' claims [are] the same, the products [are] closely related, and the defendants [are] the same", courts permit the plaintiff's claims to go forward and permit discovery to be conducted on those closely related products/services. See Sauer v. Subaru of America, Inc., 2020 WL 1527779, at *3 (D.N.J. March 31, 2020).

5

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

As set forth above, the enforceability of the arbitration provision and the acceptance of the Terms and Conditions are relevant to the issues before the Court. Because of that whether customers are clicking the links in the emails or opting out of the arbitration provision is relevant to Plaintiffs' arguments that the arbitration provision is not valid.

**DEFENDANT'S POSITION:**

For the reasons discussed in Defendant's position on Dispute No. 2, these requests fall outside the limited scope of discovery authorized by the Court at this juncture. The number of customers who clicked on links in emails or opted out of the Terms and Conditions have no bearing on the question of whether ***these named Plaintiffs*** in this matter executed valid opt-outs of Defendant's arbitration agreement. Again, at best, the requests go to the issues of arbitrability and enforceability that have been delegated to the arbitrator. Moreover, Plaintiffs' request for production of opt-out data relating to individuals other than themselves is not only outside the scope of permitted discovery, but it is also overly broad, unduly burdensome, and implicates and violates the privacy rights of other T-Mobile customers.

**Dispute No. 4: Whether requests for documents given to or communications with Plaintiffs are discoverable, and, if so, whether T-Mobile's objection that the documents may be in the Plaintiffs' possession is valid.**

**REQUEST NO. 3:** *Documents given to any named Plaintiff at the time they began service.*

**REQUEST NO. 4:** *Documents given to any named Plaintiff each time any named Plaintiff renewed service.*

**REQUEST NO. 5:** *Documents e-mailed to any named Plaintiff that refer or relate to the Opt Out procedure.*

**REQUEST NO. 6:** *Documents sufficient to show any communication with any named Plaintiff that refer or relate to the Arbitration Provision.*

**REQUEST NO. 7:** *Documents sufficient to show any communication with any named Plaintiff that refer or relate to the Terms and Conditions.*

**PLAINTIFFS' POSITION:** It is T-Mobile's burden to establish that Plaintiffs agreed to the Terms and Conditions. T-Mobile's position that these documents are outside the scope fails for the same reasons set forth in response to the prior disputes. Further, the fact that Plaintiffs may have received any responsive documents from T-Mobile at some point is irrelevant. T-Mobile is required to produce all documents in its possession. It cannot satisfy that requirement by saying Plaintiffs should have them. The fact that T-Mobile is asserting that the dispute is subject to arbitration does not limit the scope of discovery. T-Mobile again assumes that there is a valid binding contract between the parties. That is yet to be established and Plaintiffs will be challenging that fact. Therefore, these documents should be produced.

**DEFENDANT'S POSITION:**

6

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

Aside from the very real issue that Plaintiffs are seeking documents that they should already have, these Requests suffer from more fundamental issues. Requests Nos. 3, 4, and 7 seek information concerning documents provided to Plaintiffs at certain junctures (not specific to their arbitration agreements, including the opt out procedures). These requests exceed the scope of discovery authorized by the Court and are also overly broad and unduly burdensome. The information sought is not relevant to the limited issue on which the Court has allowed discovery – whether Plaintiffs submitted valid opt-out requests, including by complying with the contractual deadline for submitting a timely request. Requests as broad as these – seeking all documents provided to Plaintiffs throughout their relationship with T-Mobile – are in direct opposition to the strong federal policy in favor of arbitration reflected in the Federal Arbitration Act ("FAA"). In enacting the FAA, Congress intended for Courts to move disputes subject to a binding arbitration agreement like those here "as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Requests Nos. 5 and 6 seek certain communications with Plaintiffs regarding the opt-out procedure or the arbitration provision. These requests still do not bear on the limited issue of "whether the named Plaintiffs in this matter executed valid opt-outs of Defendant's arbitration agreement." At best, they relate to the manner in which the arbitration agreement or opt out procedures were presented to Plaintiffs. As such, these requests focus on the conscionability or enforceability of the arbitration agreements and opt out procedures, and those issues have been delegated to the arbitrator, making discovery improper for all the reasons set forth in T-Mobile's position on Dispute No. 2. With respect to Request 5, T-Mobile further notes that it has already produced the form of email Plaintiffs received in April 2023, alerting them to an update to T-Mobile's Terms and Conditions, which included a hyperlink to the 2023 Terms and Conditions (including the Arbitration Provision and the Opt-Out provision). ECF 11-6.

**Dispute No. 5: Whether requests for documents that support Defendant's purported position on the acceptance of T-Mobile's terms and conditions and the enforceability of T-Mobile's arbitration agreement are discoverable.**

> **REQUEST NO. 20:** *All Documents that support Defendant's claim that the named Plaintiffs agreed to the Terms and Conditions each time the Terms and Conditions were updated.*
>
> **REQUEST NO. 21:** *All Documents that support the Defendant's claim that the Arbitration Provision is enforceable.*

**PLAINTIFFS' POSITION:** Documents supporting T-Mobile's argument that Plaintiffs agreed to arbitrate go to the heart of the issue before the Court. The fact that T-Mobile alleges it produced the Terms and Conditions and some notices does not fully respond to the requests at issue. There is no basis for T-Mobile's refusal to produce all documents that support its claim that Plaintiffs agreed to the Terms and Conditions and that the arbitration provision is enforceable.

**DEFENDANT'S POSITION:**

7

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

The requests in this category focus on legal issues not currently before the Court that go far beyond the narrow scope of the Court's "limited discovery only as to whether the named Plaintiffs in this matter executed valid opt-outs of Defendant's arbitration agreement." Whether Plaintiffs agreed to T-Mobile's Terms and Conditions and whether T-Mobile's Arbitration Provision is enforceable are wholly different questions than whether Plaintiffs opted out of their arbitration agreements. Again, Defendant already produced – and Plaintiffs are in possession of – the information needed to determine whether Plaintiffs executed valid opt-outs: Plaintiffs' contracts containing a binding arbitration obligation; the then-current Terms and Conditions setting forth the deadline for opting out, and the extracted data reflecting Plaintiffs' requests to opt out in 2024. These materials confirm that Plaintiffs' June 2024 opt-out attempts were untimely, and therefore invalid.

Request No. 20 seeks documents that go to the question of whether Plaintiffs agreed to arbitrate their claims with T-Mobile in the first instance. But that question is not currently before the Court and not the topic on which the Court allowed limited discovery. On September 12, 2024, Judge Farbiarz denied Defendant's Motion to Compel Arbitration without prejudice pending the resolution of T-Mobile's Motion to Dismiss for Lack of Personal Jurisdiction, which remains pending. ECF 14. On October 30, 2024, Plaintiffs filed a letter requesting that the Court stay Plaintiffs' filing of their opposition to T-Mobile's motion to dismiss and allow Plaintiffs to conduct jurisdictional discovery and "discovery on the issue of arbitration." ECF 20. Judge Farbiarz denied Plaintiffs' request for a stay and jurisdictional and arbitration-related discovery at that time. ECF 21. Notably, Defendant has already provided Plaintiffs with documents that it believes support its position that Plaintiffs agreed to arbitrate their claims against it. They are attached to Defendant's original Motion to Compel Arbitration.

Request No. 21 goes to the enforceability of Plaintiffs' arbitration agreements, which is an issue delegated to the arbitrator. Discovery thus is improper for the reasons set forth in T-Mobile's position on Dispute No. 2. If Plaintiffs believe they need these documents to litigate their claims against Defendant, they can make that request to the arbitrators who are ultimately assigned to this dispute.

**Dispute No. 6: Whether Plaintiffs are entitled to certain documents that are referenced in, referred to or related to the Certification of Judy Sanchez.**

**REQUEST NO. 32:** *All documents referenced in the Certification of Judy Sanchez ("Sanchez Cert.").*

**REQUEST NO. 33:** *All documents that refer or relate to the records referenced in paragraph 63 of the Sanchez Cert.*

**REQUEST NO. 34:** *All documents that support Defendant's statements in paragraphs 63-66 of the Sanchez Cert.*

**PLAINTIFFS' POSITION:** T-Mobile relies on the Certification of Judy Sanchez in support of their motion to compel arbitration. Plaintiffs are entitled to all documents relied upon by Ms. Sanchez in creating that certification. This includes documents that were

8

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

relied upon to make the unsupported statements contained in ¶¶63-66 of the certification. T-Mobile's response that it produced a four-line spreadsheet showing when Plaintiffs opted out does not make sense. The requests seek documents that support Ms. Sanchez's statements that T-Mobile has not received opt-out requests from Plaintiffs. The requests seek something entirely different than what T-Mobile asserts in response. Therefore, T-Mobile must produce the requested documents.

**DEFENDANT'S POSITION:**

These requests seek information referenced in Judy Sanchez's Declaration in Support of T-Mobile's Motion to Compel Arbitration, including T-Mobile records related to Plaintiffs' opt-out attempts. In her Declaration, Judy Sanchez represented that "T-Mobile's records reflect that it has not received any opt-out requests from or on behalf of" any Plaintiff. ECF 11-4 ¶¶ 63-66. These statements were based on Judy Sanchez's review of records reflecting opt-out requests that T-Mobile received through May 2024, which would have included any timely opt-out requests from Plaintiffs pursuant to T-Mobile's Terms and Conditions. Those records did not reveal any opt-out requests by or on behalf of Plaintiffs, timely or otherwise.

Upon receiving the Exhibits attached to Plaintiffs' Requests, Ms. Sanchez reviewed records that included opt-out requests made through and including the dates indicated on the Exhibits. These records reflected Plaintiffs' opt-out requests submitted in June 2024 (consistent with Plaintiffs' Exhibits). T-Mobile then produced an excel of extracted data created for the purpose of responding to Request No. 37, establishing the date of Plaintiffs' opt-out requests in June 2024 and confirming that these requests were untimely. As detailed above, this document, combined with the Plaintiffs' contracts and Terms and Conditions Defendant has produced, are the documents that support Defendant's statements in paragraphs 63-66 of Ms. Sanchez's Declaration and are the responsive documents that fit within the narrow scope of discovery allowed by the Court.

Any other documents that potentially would be responsive to these requests do not fall within the Court's "limited discovery only as to whether the named Plaintiffs in this matter executed valid opt-outs of Defendant's arbitration agreement." To the extent Plaintiffs seek production of opt-out data relating to individuals other than Plaintiffs, for example, such a request is not only outside the scope of permitted discovery, but it is also overly broad, unduly burdensome, and implicates and violates the privacy rights of other T-Mobile customers.

With respect to Request No. 32, Defendant has already produced all documents specifically referenced in Judy Sanchez's Declaration as exhibits to its Motion to Compel Arbitration. *See* ECF 11-4 through ECF 12-19. And more importantly, for purposes of this dispute and as detailed above, T-Mobile has already provided all the information needed to determine whether the named Plaintiffs in this matter executed valid opt-outs of their arbitration agreements.

LEGAL02/46018945v10

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

**Dispute No. 7: Whether Plaintiffs are entitled to documents related to T-Mobile's employee training.**

**REQUEST NO. 42:** *Documents sufficient to show employee training regarding how to respond to questions about the Arbitration Provision.*

**REQUEST NO. 43***: Documents sufficient to show employee training regarding how to determine if a customer Opt Out complies with the Terms and Conditions.*

**PLAINTIFFS' POSITION:** T-Mobile's training materials are relevant to Plaintiffs' defenses that they validly opted out of the arbitration provision and that the arbitration provision is unenforceable. T-Mobile's assertion that certain issues have been delegated to an arbitrator has no bearing on these issues because there has been no determination that Plaintiffs are subject to arbitration. Therefore, given the broad scope of discovery, T-Mobile should produce all responsive documents.

**DEFENDANT'S POSITION:**

As discussed repeatedly above, requests concerning employee training on T-Mobile's arbitration process are way outside the scope of "limited discovery only as to whether the named Plaintiffs in this matter executed valid opt-outs of Defendant's arbitration agreement." Training on responding to arbitration questions and determining if a customer opts out of arbitration has no bearing on whether these named Plaintiffs timely opted out of arbitration, which they did not.

Moreover, T-Mobile does not formally train its employees on the opt out process. The opt out process, including the timing for doing so, is laid out on the applicable Terms and Conditions. Presently, T-Mobile allows customers to opt out of arbitration within 30 days from the earlier of (1) the date the customer purchased a product or device from T-Mobile or (2) the date the customer activated a new line of service. If a customer claims to have opted out of arbitration, the only thing that needs to be done is looking at the dates of the purported opt-out and the language of the Opt Out provision in the Terms and Conditions in effect when the customer executed their arbitration agreement. T-Mobile is therefore not aware of any documents responsive to Request No. 43. Any information about training on other aspects of the arbitration process, at best, goes to the issues of arbitrability and enforceability that have been delegated to the arbitrator, and these Requests are improper for that reason, as well.

**Dispute No. 8: Requests where T-Mobile is not aware of any additional responsive documents.**

**REQUEST NO. 19:** *All Documents that support Defendant's claim that Plaintiffs didn't opt out within the Opt Out period.*

**REQUEST NO. 28:** *All documents that refer or relate to Opt Out confirmation code KJRBYIMO as set forth in Exhibit A.*

10

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

> **REQUEST NO. 29**: *All documents that refer or relate to Opt Out confirmation code AEN79XPL as set forth in Exhibit B.*
>
> **REQUEST NO. 30**: *All documents that refer or relate to Opt Out confirmation code UUJ7M6BK as set forth in Exhibit C.*
>
> **REQUEST NO. 31**: *All documents that refer or relate to Opt Out confirmation code R3J5ADFH as set forth in Exhibit D.*
>
> **REQUEST NO. 35:** *All documents that refer or relate to how Defendant processes Opt Outs once the customer submits an Opt Out request.*
>
> **REQUEST NO. 36:** *All documents that refer or relate to how Defendant determines if the customer Opt Out was effective.*
>
> **REQUEST NO. 37:** *All documents that refer or relate to Exhibits A – D.*
>
> **REQUEST NO. 38**: *Communications between any of Defendant's employees that refer or relate to Exhibits A – D.*
>
> **REQUEST NO. 39**: *All policies and procedures for determining if a customer Opt Out is effective subject to the Terms and Conditions.*
>
> **REQUEST NO. 41:** *All documents that refer or relate to Defendant rejecting the named Plaintiffs Opt Outs.*
>
> **REQUEST NO. 44:** *Documents sufficient to show the process used to determine if the named Plaintiffs' Opt Outs were effective subject to the Terms and Conditions.*

**PLAINTIFFS' POSITION:** It is axiomatic that the liberal scope of discovery championed by the Federal Rules can only be realized when the parties conduct a thorough search for documents--and an adequate search of a large corporate entities' documents must begin with the selection of a fair and fulsome identification of the custodial and noncustodial sources that will be searched. "The selection of custodians must be designed to respond fully to document requests and to produce responsive, nonduplicative documents during the relevant period." Kleen Products LLC v. Packaging Corp. of Am., 2012 WL 4498465, at *15 (N.D. Ill. Sept. 28, 2012), objections overruled, 2013 WL 120240 (N.D. Ill. Jan. 9, 2013) (granting in part plaintiffs' motions to compel defendants to include additional custodians in their search for ESI); Charvat v. Valente, 82 F. Supp. 3d 713, 723 (N.D. Ill. 2015) ("Court [was] troubled by the unilateral selection of custodians by [defendant] without Plaintiff's input."); see also Otto v. Abbott Labs., Inc., 2014 WL 12612682, at *4 (C.D. Cal. Mar. 10, 2014) (where "plaintiff's counsel has not been sufficiently involved in the [custodian] selection process to ensure a fulsome production of responsive documents," defendant "shall provide six additional ESI custodians for further production, the identities of which shall be agreed to by the parties"). Here, Plaintiffs have no idea what actions T-

11

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

Mobile took look for responsive documents. However, based on T-Mobile's responses to Plaintiffs' requests, it is likely that any search was superficial at best. Plaintiffs are not aware what custodians were identified and what, if any, search terms were used.

Moreover, T-Mobile's position in this case is that Plaintiffs' opt outs were not timely. Despite that, T-Mobile asserts it has no documents responsive to requests seeking documents about the opt out process, Plaintiffs' opt outs, and how it is determined Plaintiffs' did not opt out timely. Therefore, T-Mobile should have to identify its custodians, agree on search terms with Plaintiffs and produce the responsive documents.

**DEFENDANT'S POSITION:**

On May 2, 2025, T-Mobile served its First Amended Responses and Objections to Plaintiffs' requests. For these twelve Requests, T-Mobile indicated that, after a reasonable and diligent search, it is not aware of any additional documents responsive to these Requests. Plaintiffs now seek information about the searches that were conducted to determine whether or not there are additional responsive documents, including the custodians that were identified.

Any potential "discovery on discovery" is improper. Without a showing of bad faith or unlawful withholding of documents, permitting discovery on discovery "unreasonably put[s] the shoe on the other foot and require[s] a producing party to go to herculean and costly lengths" that are not fruitful. *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009). "Speculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008).

Moreover, these requests are subject to many of the same objections detailed throughout this letter. Many requests exceed the limited scope of discovery allowed by the Court at this time, and Plaintiffs have been given all of the information they need (and that T-Mobile would use) to determine whether their opt-outs were valid. As just one example, Requests Nos. 28 through 31 seek information about the confirmation codes reflected in Exhibits. T-Mobile explained in its discovery responses that these confirmation codes are randomly generated and have no relevance whatsoever to the validity of an opt-out request. Moreover, many of the requests are also overbroad given Plaintiffs' expansive definition of the terms "documents" and "communications" to seek the production of virtually any tangible item, material, or correspondence over a twenty-three-year period extending more than a decade before any Plaintiff became a T-Mobile customer.

*   *   *

As always, we thank the Court for its time and attention to this matter, and we are available if Your Honor or Your Honor's staff have any questions or need anything further.

Respectfully submitted,

*Christopher Oddo, et al. v. T-Mobile USA, Inc.*, Case No. 2:24-cv-07719 (MEF/JRA)
May 9, 2025

*/s/ Reade Seligmann*
Reade Seligmann
David B. Carpenter
Attorneys for Defendant
Dated: May 9, 2025


*/s/ Greg Kohn*
Greg M. Kohn
Attorneys for Plaintiffs
Dated: May 9, 2025

13

LEGAL02/46018945v10